## NELSON v. COMMISSIONER OF INTERNAL REVENUE.

No. 14119.

United States Court of Appeals
Eighth Circuit.

Oct. 26, 1950.

William F. Dalton, Omaha, Neb., for petitioner.

Harry Marselli, Special Assistant to Attorney General (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Robert N. Anderson and S. Dee Hanson, Special Assistants to Attorney General, on the brief), for respondent.

Before GARDNER, Chief Judge, THOMAS, Circuit Judge, and DEWEY, District Judge.

GARDNER, Chief Judge.

This matter is before us on petition to review a decision of the United States Tax Court sustaining deficiencies in petitioner's income tax for the taxable years 1943 and 1944 in the respective amounts of $2508.-36 and $2582.79. The issues presented to the Tax Court were (1) whether the petitioner and his wife operated a news agency business as partners in 1943 and 1944 and (2) whether the cost of installing certain office improvements in 1944 was a business expense of that year. The Tax Court determined both of these issues against petitioner. The only oral testimony introduced was that on the part of the petitioner, and the Commissioner introduced no evidence except in the nature of exhibits which were offered in connection with the cross-examination of petitioner's witnesses. They consisted largely of individual tax returns made by petitioner and his wife. On all the evidence and the circumstances disclosed thereby the court entered detailed findings, finding among other things that,

"The petitioner and his wife never entered into any written partnership agreement and never obtained a license to do business as a partnership in the State of Nebraska. They did not file a partnership return or report any partnership income in their individual income tax returns. In his returns for the taxable years 1943 and 1944 the petitioner reported income from his business as 'News Dealer' in the respective amounts of $19,020.45 and $28,105.44. The only income reported by his wife in those years was the rent from the Carberry Apartments, amounting to $6,925.54 in 1943 and $6,942.18 in 1944.

"All of the agency contracts under which the petitioner operated were made in his name individually.

"The petitioner and his wife did not form, or intend to form, a bona fide partnership to operate a news agency prior to or during 1943 and 1944."

The court also found that petitioner at the time of his marriage in 1897 and for some time thereafter was employed as an elevator operator at the Omaha Post Office at a salary of $50.00 per month; that his wife did some sewing and took in boarders; that they had $150.00 each at the time of their marriage and they always commingled their earnings; that while serving as elevator operator petitioner also distributed magazines in his spare time and later acquired the agency for other periodicals and the business grew to the point where in about 1899 it became necessary for him to give up the job as elevator operator and devote his full time to his news agency; that in 1901 he obtained a contract as distributing agent for the Curtis Publishing Company requiring the handling of a large number of copies of the Saturday Evening Post, and to handle this increased business he enlarged his office space and secured additional help. His wife agreed to help with the office work and did so from 1906 to 1924. Her principal duties were to hire and instruct the Saturday Evening Post salesboys and keep a record of their sales. She took care of the telephone calls, handled invoices and bank deposits and kept the office records. During this period petitioner devoted most of his time to outside work. Prior to 1926 petitioner maintained a single bank account but in 1926 it was changed to a joint account of himself and wife, both he and his wife being authorized to draw on the account. In 1899 petitioner purchased a lot in Omaha for $275.00, which was paid out of his and his wife's joint funds. A house was built on this lot at a cost of $1,000.00 paid out of their common fund and this property was later sold and other property was bought and sold from time to time. In 1931 petitioner purchased improved real estate known as the Carberry Apartments for $110,000.00, paying $22,500.00 in cash from the joint ac-

count and another piece of real estate valued at $7,500.00. Title to the property was taken in the joint names of petitioner and his wife. The property was placed in the hands of a real estate agent with instructions to use the rents first to pay off the mortgage of $80,000.00 and thereafter to pay the net income to petitioner's wife. The mortgage was retired in 1941 and the proceeds from the property since have been paid to petitioner's wife and she has accounted for that income in her income tax returns.

In seeking reversal of the Tax Court's decision petitioner charges error (1) in making the following findings of fact: "The petitioner and his wife did not form, or intend to form, a bona fide partnership to operate a news agency prior to or during 1943 and 1944." Petitioner not only challenges this finding but "all its findings and conclusions in support thereof"; (2) in making findings that the cost of making the improvements which petitioner made in the office in 1944 was a capital expenditure rather than a business expense of that year.

■ The findings of fact of the Tax Court while not conclusive on review by this court are presumptively correct and should not be set aside unless clearly erroneous, due regard being given to the opportunity of the trial court to judge of the credibility of the witnesses. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A.; United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Kohl v. Commissioner of Internal Revenue, 8 Cir., 170 F.2d 531.

■ Whether for federal tax purposes a partnership exists depends upon the particular facts in each case. A taxpayer may not by the device of a purported partnership divide his income for the purpose of preventing having it all taxed to himself, and the family partnership is looked upon with suspicion and is subjected to special scrutiny to prevent tax avoidance. Recent decisions of the Supreme Court indicate that the vital question to be determined in these family partnership cases is whether "the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.'" Commissioner v. Tower, 327 U.S. 280.

In Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, the Supreme Court gave further consideration to the family partnership problem and gave added emphasis to the thought that the intent of the parties is of very great if, indeed, not controlling importance. In the course of that opinion it is said: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted."

■ In the instant case the Tax Court found as a fact from all the evidence and attending circumstances that "the petitioner and his wife did not form, or intend to form, a bona fide partnership to operate a news agency prior to or during 1943 and 1944." The income here involved resulted from operating the news agency. The income arising from rentals of the Carberry Apartments was reported by petitioner's wife. In the course of the Tax Court's opinion it is observed that, "According to the evidence, the petitioner operated the news agency as his own individual business. His wife did render valuable assistance to him in the earlier years from about 1906 to

1924, but she has taken no active part in the business since that time. No partnership agreement was ever entered into and proof is lacking even of an intention on the part of either the petitioner or his wife to form a real business partnership. The evidence as to how or when the alleged partnership was formed is vague and indefinite. When asked by Government counsel how the partnership originated, petitioner's wife replied, 'Well, I think we talked it over together; we had no other way of doing it.' The petitioner testified that he thought a partnership was formed about 1906, when his wife agreed to help him with the business."

It is also pointed out that the wife did not contribute capital to the business as capital was not required. The agency contracts which were at least the source of the principal income were acquired by petitioner without cost. No claim of partnership was ever asserted so far as income taxes were concerned and even for the years in question the original tax returns were made by petitioner.

Petitioner relies very strongly on the decision of the Sixth Circuit in Weizer v. Commissioner, 165 F.2d 772, but the facts are readily distinguishable. In the Weizer case the wife contributed a substantial amount of capital and she rendered important and extensive services to the business from the time of her marriage throughout the taxable year. She participated in the management and control of the business and she and her husband held themselves out as partners. They filed a partnership income tax return.

We can not say that the findings of the Tax Court, based upon all the evidence and circumstances in this case, are clearly erroneous and hence they must be sustained.

 There remains to consider the contention that the Tax Court erred in finding that the cost of installing certain office improvements in 1944 was a capital expenditure rather than a business expense of that year. It appears from the evidence, and the Tax Court so found, that the improvements in question were made by petitioner to his office which was occupied under a lease of undisclosed duration, at a cost of

$976.98; that they were attached to the realty upon installation and became permanent fixtures which the evidence shows had a useful life of several years. We think the evidence warranted a finding that the improvement constituted a capital expenditure recoverable through depreciation over the asset's useful life of several years. It was in the nature of a betterment and hence not deductible from gross income for the taxable year as a business expense. Lamson Bldg. Co. v. Commissioner of Internal Revenue, 6 Cir., 141 F.2d 408. It is to be borne in mind that the evidence does not show the term which the lease had to run but it does show that the improvement had a usable life of several years.

The decision of the Tax Court is therefore affirmed.