## COOKE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4496.

United States Court of Appeals
Tenth Circuit.

Jan. 3, 1953.

Rehearing Denied April 14, 1953.

John H. Cantrell, Oklahoma City, Okl. (Edward M. Box, Oklahoma City, Okl., on the brief), for petitioner.

Carlton Fox, Special Asst. to the Atty. Gen. (Charles S. Lyon, Ass't Atty. Gen., and Ellis N. Slack, Special Ass't to the Atty. Gen., on the brief), for respondent.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This is a proceeding to review a decision of the Tax Court which fixed deficiencies in petitioner's (herein referred to as taxpayer or Cooke) income tax for the years 1941 and 1943, at $46,239.86 and $70,995.51 respectively. The appeal presents two primary issues: 1, whether, within the meaning of the statute,[1] credits on the taxpayer's books for the purpose of sharing 1941 business profits with key employees constituted "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business"; and 2, whether the taxpayer had, for income tax purposes, entered into a partnership with his key employees as of January 1, 1943.

Since 1908 the taxpayer had been engaged as an individual in roofing and sheet metal work, doing business under the firm name of C. C. Cooke, Company. Through the years the taxpayer had acquired key employees. These were highly entrusted individuals who supervised work and assisted in managerial duties. They were paid whether or not there was work to be done. From 1930 on, work was scarce but the company made a profit through 1940 except for the years 1932 and 1933. In 1941 these key employees included J. C. Leister, manager of the branch office in Texas, who received a salary and a share of the profits; L. E. Hodges, a mechanic and roofer who supervised certain construction projects; J. P. Ground, a laborer who supervised the fabrication of materials to be erected on jobs; Clint C. Cooke, Jr., taxpayer's son, who supervised the work of different contracts; and Charles H. DeLaughter, bookkeeper. Prior to 1941, all of these employees were paid salaries and bonuses comparable to those paid by other organizations similar to that of the taxpayer. For a considerable time prior to 1941, Cooke had induced these employees to stay with his organization upon his promise that when the profits of the business were adequate, there would be a division among them. There was a profit in the 1940 business but due to pressing obligations the taxpayer prevailed upon the employees to waive any claim for participation in them.

It was apparent that there would be a substantial profit in 1941 from war contracts in which Cooke was associated. In July of that year taxpayer requested DeLaughter to determine whether the revenue laws would allow amounts paid out to employees on a profit sharing arrangement to be deducted as ordinary and necessary business expenses in computing income tax. DeLaughter reported that he found nothing which would prohibit the allowance of such amounts. The business profits for 1941 were $126,456.66. On February 24, 1942, DeLaughter was directed by the taxpayer to credit on the books of the company 20% of the total profits to the accounts of Cooke, Jr., 20% to Ground, 5% to Hodges and 5% to DeLaughter. Prior to this time there had been no definite agreement or understanding as to what the division would be. The following day DeLaughter was advised by the taxpayer that he had not been with the organization long enough to warrant his sharing in the profits and he was directed to credit

---

1. The applicable portion of 26 U.S.C.A. § 23(a) (1) (A) reads:
· "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
"(a) Expenses
"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered;"

Hodges with 10% instead of 5%, and De-Laughter was not to participate until the following year.[2] When these credits were made on the books, an entry was then made charging salary expenses with the amount of the credits. The explanation of the entry classified the amounts as distributions of profit in accordance with an agreement of January 1, 1941, without any statement that it was additional compensation for services rendered during prior years. In computing the amounts, no deductions were made for salaries already paid during any of the previous years. Income tax returns were prepared by DeLaughter for each of the employees on a cash basis, and checks were drawn on the company to pay the taxes, both state and federal, and charged against the account of each employee. These returns included the amounts credited to the employees and they were treated as income for personal services for the year 1941. The taxpayer was on an accrual basis and reported his gross income for the year 1941 as $168,209.14 and deducted for salaries $78,330.91, which included the division of profits. The Commissioner disallowed the item of $63,228.34 upon the grounds that payment was not an ordinary and necessary expense of the business or a reasonable allowance for salaries or other compensation for personal services actually rendered, and that the allowances "were made solely for the purpose of avoiding income tax and not for the purpose of setting up bona fide credits" to the employees. The Commissioner also assessed the usual fraud penalty. The Tax Court was of the view that there was no enforceable agreement for the payment of the amounts in question in addition to the regular salaries, and further that if there were such an agreement, the amounts paid were unreasonable and excessive. The Tax Court did not assess a fraud penalty. Otherwise, there was no substantial difference between the Commissioner's action and the finding of the Tax Court.

Considering all the evidence, we agree that there was no enforceable agree-ment between the employees and the taxpayer prior to 1942 which would require the division of the profits of 1941. It is true that there had been considerable discussion in prior years concerning the participation of certain employees in the profits of the business. For the purpose of inducing the employees to remain with the company, they were told that at some time in the future a profit sharing arrangement would be devised. When this was to be done and how it was to be done were never determined. This is evidenced by what happened in February of 1942 when the division of the 1941 profits was decided upon. The division was not the result of an agreement or even a discussion with the employees but was fixed as the taxpayer thought best. Even after he had determined a division which he thought proper, he made a change without consulting anyone and increased the percentage of one employee and eliminated the share of another. This division was not made until after the taxpayer had assured himself that he would be able to deduct the amounts from his gross income in 1941. It was also a condition that the employees who were receiving the profits should include them in their income tax return for 1941 in order to correspond with the deductions as shown by the company books. The employees were on a cash basis and they should have included the amounts in their 1942 returns, as they constructively received the allowances when the credits were made to their accounts. Eckhard v. Commissioner of Internal Revenue, 10 Cir., 182 F.2d 547, 551; Treasury Regulations 111, Sec. 29.-42–2.

The taxpayer and the employees testified as to an alleged agreement or understanding for the division of profits, but it is well settled that the trial court is not bound by the declaration of a purpose made by interested parties and is free to conclude from all the facts what the real situation was. Helvering v. Chicago Stock Yards Co., 318 U.S. 693, 701, 63 S.Ct. 843, 87 L.Ed. 1086; Helvering v. National Grocery Co.,

2. By this division Cooke, Jr., and Ground each received a credit for $25,291.34, and Hodges received $12,645.66. This was in addition to the regular salary and bonuses.

304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346; United States v. Washington Dehydrated Food Co., 8 Cir., 89 F.2d 606, 609; Treasury Regulations 103, Sec. 19.23(a)–6.[3] Without attempting to further detail the evidence, we think it sufficient to say that the record discloses ample evidence to sustain the findings of the Tax Court. From what has been said, it is clear that the relationship between the parties was that of employer and employee and there is no merit to the contention that the parties were engaged in a joint adventure during the years 1941 and 1942.

■ The Commissioner makes some contention that the credits to the accounts of the employees were not real and that the money which they represented was never actually owned or controlled by the employees. The record does not support this contention. The undisputed evidence is that the credits were made on the books of the company and that the employees could have made withdrawals if they desired. The fact that the money was not withdrawn and remained in the company and was later used to purchase an outright interest therein did not change the reality of the accounts.

■ This leaves for consideration the question of whether the credits together with the fixed salaries and bonuses received by the employees constituted reasonable compensation.[4] The question of reasonableness is one of fact to be determined in the first instance by the trial court. In re Rae's Estate, 3 Cir., 147 F.2d 204, 208; Burford-Toothaker Tractor Co. v. Commissioner of Internal Revenue, 5 Cir., 192 F.2d 633, certiorari denied 343 U.S. 941, 72 S.Ct. 1033; American Pitch Pine Export Co. v. Commissioner of Internal Revenue, 5 Cir., 188 F.2d 721, 723. The Tax Court found that the amounts credited to the employees were unreasonable and disproportionate to compensation generally paid to like employees for similar services. These findings should not be set aside unless they are clearly erroneous. Burford-Toothaker Tractor Co. v. Commissioner of Internal Revenue, supra; Davis v. Commissioner of Internal Revenue, 3 Cir., 161 F.2d 361. The fact that the petitioner fixed the compensation

3. The applicable portion of this section reads:

"Section. 19.23 (a)–6. Compensation for personal services.—Among the ordinary and necessary expenses paid or incurred in carrying on any trade or business may be included a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services. This test and its practical application may be further stated and illustrated as follows:

*  *  *

"(2) The form or method of fixing compensation is not decisive as to deductibility. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally. speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than

that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid.

"(3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned."

4. Treasury Regulation 111, Par. 29.23(a) 8, provides:

"Bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered."

or agreed upon it with his key employees, does not bind the Tax Court. Helvering v. National Grocery Co., supra; Gem Jewelry Co. v. Commissioner of Internal Revenue, 5 Cir., 165 F.2d 991, certiorari denied 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770. The employees were paid compensation comparable to those employed by other construction companies in a similar business. This, in addition to other circumstances, including the allowances which were out of all proportion when compared to the employees' former salaries, we think, is sufficient to sustain the finding of the Tax Court that the amounts were unreasonable compensation, and were therefore not proper deductions from the gross income of the petitioner.[5]

As to the 1943 tax, the Tax Court found that no partnership had been created between the employees and the taxpayer, and that the amounts credited to the employees during that year should not be allowed as income to partners but should be charged as income to the taxpayer. The existence of a partnership is a question of fact. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 90 L.Ed. 670; Bratton v. Commissioner of Internal Revenue, 10 Cir., 193 F.2d 416; Stanchfield v. Commissioner of Internal Revenue, 8 Cir., 191 F.2d 826, 828; Jones v. Baker, 10 Cir., 189 F.2d 842, 844; Nelson v. Commissioner of Internal Revenue, 8 Cir., 184 F.2d 649, 651. The Commissioner contends that there is sufficient evidence to sustain the finding of the Tax Court. In Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, it was stated that all the facts and circumstances of a case should be considered to determine if a similar finding of the Tax Court was clearly erroneous. Applying this rule, we think that what we said in Eckhard v. Commissioner of Internal Revenue, supra, 182 F.2d at page 550, is applicable here, that is, "When judged in the light of realities, * * * the evidence conclusively establishes a bona fide business partnership."

The undisputed facts are that the right of the employees to share in the profits of the company had been recognized and discussed over a long period of time prior to 1943; that in 1941 and 1942 an actual division of the profits of the company was made with the employees and they were given credit on the books of the company in accordance with their respective interests, that during the year 1942 the creation of a partnership was discussed and it was agreed that the employees might use the amounts to their credit on the books of the company for the purpose of purchasing an interest in the company and the creation of a partnership; and that in March of 1943, a formal partnership agreement was prepared and executed which recited that the partnership was to be effective for the entire year of 1943. Prior to the execution of the agreement, the value of the assets of the company had been determined, and simultaneously with the execution of the partnership agreement, the interest acquired by each employee was conveyed to him. Credits on the books of the company were used to apply upon the value of the interest acquired by each employee. Some time later the creation of the partnership was published as required by Oklahoma statute, 54 O.S.1951 § 107. The business was operated as a partnership and the employees participated in the profits as partners from year to year thereafter. Taxes were paid as a partnership. Finally, the partnership interests were sold and compen-

5. The increase in payments received from the company for the years 1941 and 1942 is shown by a comparison of payments received in former years.

| | Ground | Hodges | Cooke, Jr. | DeLaughter |
|---|---|---|---|---|
| 1937 | $ 2,080.00 | $ 2,111.89 | $ 900.00 | |
| 1938 | 2,390.00 | 1,896.50 | 1,275.00 | |
| 1939 | 2,650.00 | 2,275.00 | 1,300.00 | $ 1,150.00 |
| 1940 | 2,650.00 | 2,716.00 | 3,925.00 | 1,614.00 |
| 1941 | 30,220.09 | 15,791.91 | 30,491.34 | 1,827.59 |
| 1942 | 53,033.16 | 13,258.29 | 55,633.16 | 13,258.29 |

**264**

sation was paid in accordance with the value of the interests at the time of the sale.

The Commissioner points out a number of irregularities, discrepancies and contradicting statements which he contends support the finding of the Tax Court. We think it sufficient to say that most of these appear to be trivial and not at all unusual in dealings between persons associated together as these men were. Many of the discrepancies were explained and others relied upon were not actually contrary to the partnership relation and did not show any lack of good faith between the parties.

The deficiency established by the Tax Court for the year 1941 is affirmed, and the deficiency for the year 1943 is reversed, each party to pay its own costs.

On Petition for Rehearing.

On petition for rehearing, the taxpayer strenuously contends that the record conclusively shows that there was an enforceable contract between the taxpayer and certain of his employees to share his business profits for the years 1941 and 1942. Evidence is referred to at length which tends to show that during the year 1940 the taxpayer agreed that if the employees would waive their claim to a division of the 1940 profits, the 1941 and 1942 profits would be divided fifty percent to the taxpayer and fifty percent to the employees. We have no doubt but that there was evidence which would sustain a finding that there was such a contract, but the tax court found otherwise, and upon review, these findings are conclusive if supported by substantial evidence or not clearly erroneous. A. & A. Tool & Supply Co. v. Commissioner of Internal Revenue, 10 Cir., 182 F.2d 300. We think there is sufficient evidence in the rec-

ord from which a lawful inference may be drawn that there was no enforceable contract requiring a division of the profits for the years 1941 and 1942.

The taxpayer relied upon the same evidence to support an agreement for a division of profits for 1942 as he did for the year 1941. Consequently, what we had to say regarding the 1941 taxes applies to those for 1942. If there was any other agreement or commitment to divide the 1942 profits, it was not made until February, 1943 and was not made pursuant to a free bargain between the employer and the employees before the services were rendered, as required by Section 19.23(a)–6(2), Treasury Regulations 103.[1]

Petition for rehearing is denied.

---

1. "(2) The form or method of fixing compensation is not decisive as to deductibility. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bar-

gain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid."