Note.—See under (1) 28 Cyc. p. 1041 (Anno). (2) 28 Cyc. p. 1040. (3) 28 Cyc. p. 1042. (4) 28 Cyc. p. 1042.

---

## QUADRANGLE PETROLEUM CO. et al. v. KENDRICK & EASON LBR. CO. et al.

No. 15010—Opinion Filed Sept. 28, 1926.

1. **Oil and Gas—Mining Partnership—Distinguishing Characteristics.**

An agreement between two or more persons having a common interest to develop an oil and gas lease and divide the profits is a mining partnership, but subject to the same rules of law as a general partnership, except in the difference of its formation and dissolution, and its restriction in the lack of power on the part of a mining partner to bind his copartners.

2. **Partnership—"Subpartnership" — Status of Outsider Under Subcontract with Partner.**

A contract between a member of a partnership and an outsider to give him an interest in the profits accruing to such member from the business in consideration of his paying a part of the member's expenses in carrying on the business, is a subpartnership, and does not make him a member of the partnership or liable to third parties.

3. **Same — Mining Partnership — Lack of Proof.**

The record examined, and held, that there is no evidence to prove a partnership with defendants, Quadrangle Petroleum Company, O. A. Triplett, Theo. Harris, George West, Jr., and P. D. McClung, in the lease or to render them liable to third parties for debts of the partnership.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by Kendrick & Eason Lumber Company against O. A. Triplett et al. Judgment for plaintiff, and defendants appeal. Reversed.

McKeever, Moore & Elam, for plaintiff in error.

H. Grady Ross, for defendant in error Kendrick & Eason Lumber Company.

Carl Kruse, for plaintiffs in error O. A. Triplett et al.

Opinion by THREADGILL, C. This action was commenced by one of the defendants in error, Kendrick & Eason Lumber Company, a corporation, hereinafter called plaintiff, as it appeared in the trial court,

against Graham Production Company, a partnership, to recover a money judgment in the sum of $519.15 for lumber, cement and other materials, sold and delivered to said defendant to be used in the development of an oil and gas lease.

The petition alleged that the plaintiff partnership was composed of Nat Kendrick, Coleman Kendrick, and T. T. Eason, and defendant partnership was composed of John S. Graham, O. A. Triplett, O. F. Cameron, Foster Cameron, Lester Cameron, Theo. Harris, C. M. Hunter, E. A. Myers, Minnie M. Kent, P. D. McClung, W. L. Kendall, George West, Jr., Quadrangle Petroleum Company, and C. T. Kent. Plaintiff stated that said defendant was the owner of a certain oil and gas lease and oil and gas rights and production from the N. W. ¼ of N. W. ¼ of section 30, twp. 1 N., R. S W., in Stephens county; that said defendant was in possession of said premises and operating for oil and gas and producing the same; that John S. Graham was general superintendent and manager of said company; that said defendant was indebted to plaintiff in the sum of $519.15 for lumber, cement, and other materials sold and delivered to said defendant, at its special instance and request, between January 7th and February 7, 1922. An itemized verified account attached to the petition as exhibit A. Plaintiff asked for judgment against the company and against each of the partners and members composing said company. After demurrers were overruled or waived, the parties designated as members of the defendant partnership filed separate verified answers, which, in substance, consisted, first, of a general denial, and then they denied that they were members of the partnership as alleged by plaintiff. and denied any liability on their part for the indebtedness claimed by plaintiff. A jury was waived, and the issues as thus joined, on May 26, 1923, were tried to the court and resulted in a judgment for plaintiff against Graham Production Company and all parties named as members of the partnership, except Foster Cameron, Lester Cameron, and W. L. Kendall. Defendants excepted to the judgment and filed motions for new trial, alleging, in substance, that the judgment was contrary to the law and evidence. The court overruled the motions, and all parties excepted, and asked for an extension of time to prepare and serve case-made, which was granted, and all the defendants have appealed by one petition in error and one case-made attached. The defendants seek to have the judgment reversed, on the ground that the evidence

was not sufficient to prove that they were members of the Graham Production Company, a partnership.

The undisputed evidence shows that on January 14, 1921, Hannah A. Dow, widow of Smith Center, Kan., owned the land involved in this controversy, and on said date executed an oil and gas lease on the same to E. A. Myers of Enid, Okla., for a term of five years, and as long thereafter as oil or gas was produced in paying quantities. The contract was in the usual form of such leases. It appears that C. T. Kent, O. A. Triplett, Naomi Forbes, F. O. Harris, O. F. Cameron, John S. Graham, C. E. Baker, Chas. H. Graham, and C. M. Hunter were jointly interested with E. A. Myers in the lease, and on February 11, 1921, they entered into a drilling contract with John S. Graham, one of the members of the partnership, and agreed that if he would undertake, within 60 days from said date, to commence drilling the first well, and do the work as fast as practicable on the said lease and at his own expense, and without any expense to first parties, that when completed this contract should operate as a complete assignment of the parties of the first part to said party of the second part of a 7/16th interest in the lease contract from the said Hannah A. Dow. It was further provided that the production from the first well, or of the other wells to be drilled, should be used in paying the expenses of drilling all wells except the first well, with the understanding that the royalty to the original lessor should be paid, and after the expenses were paid, the profits should be divided, 7/16th to first parties and 7/16ths to said second party. Second party was to have full control and management of the work of development of the lease. It was further provided that second party should have the right to sell and transfer the interests of all parties in said property, or sell the oil or gas and account to the parties according to their respective interests. On March 2, 1921, John S. Graham, by contract, employed Peard and Garrison to drill the first well, and when it was completed said John S. Graham was in their debt for balance due on said work, a sum of $9,177.25, and to pay this indebtedness he entered into a written contract with said Peard and Garrison on May 21, 1921, by which he sold and assigned to them an undivided one-ninth interest in and to all profits that might accrue to him as party of the second part under his contract with the owners of the lease of February 19, 1921, by which he obtained his 7/16ths interest in the leasehold estate. It was agreed in his assignment

to Peard and Garrison that they would perform one-ninth part of all obligations incurred by said John S. Graham, in the further development of the leased premises. It was further agreed that John S. Graham should have full management and control of all interests in said contract and the performance thereof, as well as the absolute right at any and all times to sell and dispose of all the property under the lease and receive payment for same, and account to the interested parties, but his books and records should be open at all times to the inspection of said Peard and Garrison. On May 20, 1921, A. A. Peard, of the firm of Peard & Garrison, assigned his interest under this contract to Mrs. A. C. McIntyre, and on September 24, 1921, Mrs. A. C. McIntyre and W. F. Garrison, of the firm of Peard & Garrison, assigned their interest to Quadrangle Petroleum Company, a corporation. At various other times there were assignments by John S. Graham to the other defendants of fractional parts of his prospective profits to be derived from his 7/16ths interest in the development of the leasehold estate.

It will be observed, however, that none of the assignments were for an interest in the lease, but in every case for an interest in the profits accruing to John S. Graham. The principal consideration in every case, except the assignment to Peard & Garrison, was to furnish the proportionate part of the development expenses represented by the part assigned, while it may be considered that the principal consideration by Peard & Garrison was to pay their 1/9th part of the expense, as well as the debt owing them by drilling the first well. All the contracts and assignments were placed of record. This appears to have been the plan of financing the development of the lease, and by this plan six wells were drilled. It is agreed that the claim involved in this action was made in connection with drilling the sixth well. The evidence further shows that the assignees of John S. Graham often sat in counsel with the owners of the lease, and discussed and advised in the matter of developing the lease, but there is no evidence that they took any part in the actual work of development as owners.

The defendants contend that the judgment of the court, under the evidence, was incorrect in holding that the assignees of John S. Graham were partners with the owners of the lease, and as such liable with them jointly and severally for all the debts of the development. On the other hand, the plaintiff contends that since the assignees of John S. Graham were to furnish their proportionate part of the expense, that is, the fractional part of the expense requested by the fractional interest of the profits assigned to them respectively, and sat in counsel with the owners, that they were members of the partnership as a mining partnership or venture, and as such liable jointly and severally for the debts of the enterprise.

The question for the court to determine is whether or not the Quadrangle Petroleum Company, a corporation, and the other defendants were members of the mining partnership composed of the owners of the leasehold estate. As a general proposition of law corporations cannot enter into copartnership with each other, or with individuals, as such agreements are considered ultra vires. 18 L. R. A. (N. S.) 964, Note. See, also, Municipal Paving Co. v. Herring, 50 Okla. 470, 150 Pac. 1067. But this question was not raised as a defense in the trial of the case, nor urged for consideration on appeal. We think it is conceded that the character of the partnership involved is that of a mining partnership.

"The principal distinctions between a trading partnership and a mining partnership are that a member of the latter may assign his interest without the consent of his copartners, and neither the assignment of a partner's interest, nor the death of the partner, works a dissolution of the partnership; that the assignee of an interest in the partnership becomes a partner without the assent of the other partners, and a member of the mining partnership has not the power to bind his associates by engagements with third persons to the same extent as a member of a trading partnership." Bentley v. Brossard et al. (Utah) 94 Pac. 737; Meager v. Reed (Colo.) 24 Pac. 681.

However, in the application of the law to the facts in the instant case, there is no question involving this distinction to be determined. If defendants were partners of the Graham Production Company, they were liable for the debts contracted for the purpose of developing the wells; if they were not members, they were not so liable.

Our statute, section 8103, Comp. St. 1921, defines a partnership as "the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them." Construing this statute in the case of Citizens National Bank of Chickasha v. Mitchell et al., 24 Okla. 488, 103 Pac. 720, this court defines a partnership as follows:

"A partnership is a relation arising out of a contract to do certain things, and exists only where the parties intend to enter into such a contract, and, unless they have estopped themselves by holding them-

selves out to the world as partners, their intentions as derived from the contract are decisive."

See, also, McKallip et al. v. Geese et al., 30 Okla. 33, 118 Pac. 586.

The whole of the body of case law is replete with authorities defining partnerships as they relate to the members themselves, to their duties and liabilities, as well as their duties and liabilities to third parties. It appears that no hard and fast rule or statute has ever been constructed sufficiently comprehensive to explain all the essential elements of a partnership, and fix the relation of its members to themselves, as well as their relation to third parties; however, there are certain well defined principles that may be applied to each particular case in determining its character and fixing the duties and liability of its members. See note under Miller v. Simpson, 18 L. R. A. (N. S.) 962. Some of the essentials are that there must be more than one person, there must be an agreement, express or implied, to carry on a joint business for the common benefit of all, to which each contributes either property or services, and the profits resulting from the enterprise are to be shared between or among the members. This statement may be further reduced to say that it is essential to a partnership to have an agreement to engage in a business as owners for the common benefit in which the parties so engaged are to share the profits arising therefrom. These principles are essential to a partnership in fixing the relation of its members to each other; and there is no difference in the essentials necessary in fixing the relation of its members to third parties, except the fact that liability to third parties may be fixed by the act of one holding himself out as a member of the partnership, or knowingly suffering it to be done, even where he is not such member, but the exception seems to be based upon the doctrine of estoppel. McKallip et al. v. Geese et al., supra.

The above observations are supported by the decisions and the great body of the law, both in this country as well as in England. See note under Miller v. Simpson, supra; also 22 Amer. Enc. of Law, p. 27. Applying these principles to the contract and facts of the case at bar, we fail to find the necessary elements in the contract assigned to the Quadrangle Petroleum Company, or contracts with the other defendants, to make them proprietary members of the partnership. These contracts do not give defendants any proprietary interest in the lease. The only interest conveyed is a fractional part

of the profits accruing to John S. Graham, who was owner of an undivided one-half interest in the lease. John S. Graham must have set off to him by the partnership his one-half interest of the common profits before defendants could claim their respective interests. In other words, defendants could claim no interest in the partnership profits since their contracts only called for certain fractional interests in the profits to be set off to Graham, not undivided profits arising from the business or enterprise, but divided profits in the possession of a member of the partnership as his property. This is the interest fixed by the respective contracts, which were of record and of which plaintiff had notice, and these contracts did not make defendants members of the partnership. 30 Cyc. 371; McKallip et al. v. Geese et al., supra.

But plaintiff contends that defendants took a personal interest in the affairs of the partnership by sitting in counsel with the members, and by advising as to the locations of wells and general business of development, and by joining in the power of attorney, dated September 1, 1921, to borrow money and mortgage the lease to finance the development.

We have examined the evidence on this point, and we cannot see how advising with the members of the partnership, as related by the record, could be a holding out to the world that defendants were partners. There is no evidence to show that plaintiff knew anything of the advice given or taken. These consultations were not open to the public. As to the power of attorney, it appears that O. A. Triplett, George West, Jr., P. D. McClung, and Quadrangle Petroleum Company, did not sign this instrument, although their names are in the body of it. It also appears that C. T. Kent signed the power of attorney, and also acted as notary public in taking the acknowledgment to it of Chas. H. Graham, O. F. Cameron, O. A. Triplett, C. E. Baker, Theo. Harris, Naomi Forbes. Under all these facts and circumstances, we do not find any question of estoppel in the case. We think the relation of the defendants to the partnership, as well as to third persons, is fixed by the contracts as a subpartnership, as defined by the authorities collected in the note under the subhead "XXII Subpartnerships," in the case of Miller v. Simpson, supra. One of the general rules as here stated is as follows:

"An agreement on the side between a third person and one of the partners in an existing firm to pay the latter half his contribution to the capital and one-sixth of any loss that might occur, and to receive in return

a sixth of the profits, does not make such third person a partner in the firm, nor subject him to any liability for its debts. Raynolds v. Hicks, 19 Ind. 113."

The cause is therefore reversed, with directions to the trial cou..t to vacate the judgment against the defendants, and render judgment in their favor.

By the Court: It is so ordered.

Note.—Sue under (1) 40 C. J. p. 1146 §798 (Anno); p. 1147. §800; anno. 18 L. R. A. (N. S.) 965; 20 R. C. L. p. 1059. (2) 30 Cyc. pp. 381, 382, 396; anno. 18 L. R. A. (N. S.) 1099; 20 R. C. L. p. 1074. (3) 30 Cyc. pp. 392, 415.