### ECKHARD v. COMMISSIONER OF INTERNAL REVENUE.

No. 3991.

United States Court of Appeals
Tenth Circuit.
May 15, 1950.

John E. Marshall and John J. Griffin, Oklahoma City, Okl. (H. L. Douglass and Sylvanus G. Felix, Oklahoma City, Okl., were with him on the brief), for petitioner.

Hilbert P. Zarky, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, and Ellis N. Slack and Harry Baum, Special Assistants, were with him on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The first question presented by this appeal is whether the petitioner taxpayer and his wife were business partners for income tax purposes during the taxable year 1943. The Commissioner determined that they were not, and the Tax Court affirmed. Another question is whether salary earned by the petitioner from a corporation, of which he was president, from July 1, 1941 to February 28, 1943, but left in the corporation as working capital until he received it in 1943, is income to him in the year when earned, or in 1943 when he received it. The Tax Court sustained the Commissioner's determination that the compensation was taxable to the petitioner in the year in which it was received. On appeal, the taxpayer contends that the judgment of the Tax Court is clearly erroneous in each instance.

The primary facts are not in dispute. The taxpayer graduated from the University of Nebraska in 1924. While in school, he married his present wife, whose legal education was interrupted by their marriage and the birth of a baby. The taxpayer earned from $40 of $175 per month at various jobs. To supplement the family income, the wife secured a job at a bank, beginning at $85 per month. She soon became secretary to the president of the bank, in which capacity she checked loans, passed upon collateral, and transacted other important banking matters. Her salary increased from $85 to $150 per month. She invested her savings in a home and stock in an oil company. The husband and wife had discussed the possibility of getting into some kind of business together. In 1941, while the husband was employed as a salesman for the General Tires, Inc., he heard of an opportunity to buy a tire agency at Oklahoma City. After he and his wife came to Oklahoma City and investigated the business, they decided to sell their home and the stock in the oil company, and invest the proceeds in the tire business.

Accordingly, they sold the home for approximately $3500, and the stock in the oil company for about $4000. They purchased 50 of the 147 shares of the corporation owning the tire business, paying $2500 in cash and giving a joint note for $2500. The shares of stock were taken in the name of the taxpayer-husband, because the parent corporation refused to do business with a woman. Under the petitioner's contract with the corporation, he agreed to purchase the remaining shares of the corporation

for a stipulated sum. It was also agreed that he would receive a salary of not to exceed $350 per month, and all of the profits of the business after deducting 6% dividends on the outstanding stock and sound reserve for taxes.

The remainder of the proceeds of the sale of the home and oil stock were invested in the business, the parties moved to Oklahoma City and established a home; and the wife and husband worked together in the operation of the retail and wholesale tire business. The wife looked after the administrative details, the hiring and firing of help, keeping books, and running the office. The husband devoted most of his time traveling and overseeing the outside work.

Through the joint efforts of the taxpayer and his wife, the business prospered, and in January 1943, the taxpayer purchased the remaining outstanding stock for $10,657.50 with the profits from the business and a joint note for $2500. In the following February, he dissolved the corporation, and thereafter operated the business as a sole proprietorship. The wife drew no salary —as a matter of fact, neither actually drew a salary, but drew on the business for living expenses. The remainder of the profits were invested in real estate and other propties in the joint name of husband and wife. The parties never had any formal partnership agreement, the wife stating that when it became necessary to have a written agreement with her husband, she would not be living with him. No partnership accounts were set up showing the interest of each, and no partnership returns were ever filed. In fact, the business was conducted in the name of H. A. Eckhard, either as president of the corporation, or as owner of the business.

For the taxable year 1943, neither of them having any knowledge of income tax law, their auditor or tax accountant made a community property return under the Oklahoma community property law, later invalidated in Commissioner v. Harmon, 323 U.S. 44, 65 S.Ct. 103, 89 L.Ed. 60. The wife testified that at the time she suggested a partnership return as more accurately reflecting their business arrangement, but yielded to the advice of the tax accountant to elect to come within the community property law.

The Tax Court's conclusions are based upon a number of considerations, among which was the total lack of any written agreement, or of any other books or records indicating an intention to conduct the business as a partnership. Nor did the court think that there was a positive oral agreement between the husband and wife. These facts, while not conclusive, coupled with the conduct of the business in the name of the taxpayer as the sole proprietor, led the court to conclude that while the wife did contribute capital originating with her, along with skill and services in the conduct of the business, such contributions were those of a wife to a husband's business, and not as a business partner.

■ It has been repeatedly affirmed that "A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." Commissioner v. Tower, 327 U.S. 280, 286, 66 S.Ct. 532, 535, 90 L.Ed. 670, 164 A.L.R. 1135. See also Commissioner v. Culbertson, 337 U.S. 733, 740, 69 S.Ct. 1210, 93 L.Ed. 1659; Trapp v. United States, 10 Cir., 177 F.2d 1, 4; Champlin v. Commissioner, 10 Cir., 71 F.2d 23. And, while a husband and wife may engage in business as partners, we will scrutinize the family arrangement to determine whether in the last analysis, the parties really intended in good faith to join together their money, labor and skill for the purpose of carrying on the business as a bona fide partnership. Each case must rest upon its own facts, but in determining the intent of the parties, the court will look at what the parties actually did to effectuate their avowed intentions. While investment of capital, skill and labor are essential attributes, they are not conclusive. In short, taxation being a practical matter, we should look through the form to the substance of their transactions.

Thus, in Commissioner v. Culbertson, supra, the taxpayer, engaged in the business of breeding and selling cattle, formed a

partnership with his four sons, to whom he sold an undivided one-half interest in the business, taking their promissory notes therefor. The notes were paid from the proceeds of the business and by gifts from the taxpayer. The oldest son was foreman of the ranch and received compensation as such, but the second son finished school and went into the army the year the partnership was formed. The two younger sons went to school in the winter and worked on the ranch in the summer. The Tax Court held the entire income taxable to the father. The Fifth Circuit reversed 168 F.2d 979, holding the partnership "actual, real" and "bona fide". The Supreme Court, emphasizing the "obvious importance" of active participation in the affairs of the business in determining whether the parties actually intended to form a business partnership, reversed and remanded with directions to determine which, if any, of respondent's sons were bona fide partners, either because of the services performed during the taxable years, or because of contributions of capital, of which they were the true owners.

Subsequently, the Fourth Circuit in Ritter v. Commissioner, 174 F.2d 377, held that a gift of a father to a son as a contribution to the partnership, who contributed no other capital or services during the time involved, did not create a partnership for tax purposes, in the face of a written agreement. The court thought that the partnership lacked economic reality.

In Trapp v. United States, supra, we denied an asserted partnership between husband and wife for income from the production of oil, the leases of which were purchased by the husband, and operated by him without any outward evidence of a partnership with his wife, although the wife did have a small estate when they were married many years before, which the husband used in his bond business, and which later ripened into the oil ventures.

The Second Circuit, in Morrison v. Commissioner, 177 F.2d 351, denied an asserted partnership between the taxpayer, his wife and minor sons, based upon gifts of interests in the business to the wife and sons. The court sustained the findings of the Tax

Court to the effect that the taxpayer was in reality a sole proprietor.

But the facts here are quite different from those cases. Nor are they like Earp v. Jones, 10 Cir., 131 F.2d 292; Grant v. Commissioner, 10 Cir., 150 F.2d 915; and Bradshaw v. Commissioner, 10 Cir., 150 F.2d 918, where the husband transferred a half interest in his business to his wife, and entered into a formal written partnership agreement, but continued to control and operate the business as before. In those cases, the courts rightly looked beyond the formal arrangements to the substance of the transaction, and held that the husband remained "monarch of all he surveyed".

The facts in our case fall more nearly within Graber v. Commissioner, 10 Cir., 171 F.2d 32. In both cases, the wife contributed capital originating with her, and used her skill and business judgment in the joint conduct of the business. In neither case did the parties have a formal agreement. In both cases, the partnership was obscured either by collateral partnerships or corporate entities. But the facts in both cases carry with them the conviction that the parties did, in good faith, intend to engage in business as partners. The absence of a formal agreement, and the failure to set up the books as partners, is certainly not conclusive. When judged in the light of realities, we think the evidence conclusively establishes a bona fide business partnership.

In 1943, and apparently upon dissolution of the corporation, the taxpayer received $12,832.76 as salary earned under his employment for the years 1941, 1942 and 1943. He now argues that such compensation was, at all times, in his constructive possession, and under his control; that as President of the corporation, he could have received it at any time, and it is therefore taxable to him in the years in which it was earned.

But the taxpayer was on a cash basis, and Treasury Regulations 111, Sec. 29.42-1, provides, with immaterial exceptions, that "gains, profits, and income are to be included in the gross income for the taxable year in which they are received by the taxpayer, unless they are included as of a

different period in accordance with the approved method of accounting followed by him. * * *"

Treasury Regulations 111, Sec. 29.42-2, provides in material part that "Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. * * *"

■ Salaries authorized by a corporation, to be paid to its officers and credited on its books or unqualifiedly set apart to the account of such officers, constitutes payment by the corporation and constructive receipt by the officer within the meaning of the Regulations. Ross v. Commissioner, 1 Cir., 169 F.2d 483. See also Weil v. Commissioner, 2 Cir., 173 F.2d 805. But mere authorization of the amount of salary or compensation to be drawn by an officer of the corporation does not constitute payment or constructive receipt, even though the officer may, at all times, have the power to effect the payment of such salary or compensation in virtue of his control of the corporation. Hyland v. Commissioner, 2 Cir., 175 F.2d 422.

■ Here, the taxpayer was on a cash basis and he never reported any of the sum in question for the years in which he earned it. Nor do the books of the corporation show a credit to the taxpayer or that any sums were set apart for salary or compensation to the taxpayer. Indeed, the record shows that the earnings were left in the corporation as "working capital" and were used by it for that purpose. The corporate return for 1941 shows a net loss of $3,-373.13; for 1942 a net income of $2,145.25;

the corporation's balance sheet showed a surplus of $545.30 at the end of 1941, and $6,652.96 at the end of 1942. It follows that the income was taxable to the taxpayer in 1943, the year in which it was received.

The case is reversed and remanded with directions to determine the petitioner's tax liability in accordance with the views herein expressed.