**UNITED STATES of America,
Appellant,**

v.

**Olive M. NEEL, Executrix of the Estate
of Alfred C. Neel, deceased,
Appellee.**

**No. 5264.**

United States Court of Appeals
Tenth Circuit.

July 2, 1956.

David O. Walter, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Hilbert P. Zarky, and Davis W. Morton, Jr., Attys., Dept. of Justice, Washington, D. C., and Paul W. Cress, U. S. Atty., Oklahoma City, Okl., on the brief), for the United States.

Roy C. Lytle, Oklahoma City, Okl. (Lytle, Johnston & Soule, Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, Chief Judge, PHILLIPS, Circuit Judge, and ROGERS, District Judge.

PHILLIPS, Circuit Judge.

Olive M. Neel, as executrix of the estate of Alfred C. Neel, brought this action to recover on a claim for refund of Federal estate tax.

The action involves a Federal estate tax deficiency assessed against the estate of Alfred C. Neel, who died testate on April 5, 1946, a resident of Cotton County, Oklahoma. The District Court found and concluded that there was a general partnership existing between Alfred and his wife, Olive M. Neel, from the date of their marriage in 1901 to the date of Alfred's death, and, therefore, only one-half of the property standing in Alfred's name and one-half of the joint bank accounts standing in the names of Alfred and Olive should be included in Alfred's gross estate. From a judgment entered accordingly, the United States has appealed.

At the pre-trial conference, the court directed counsel for Olive "to sit down with" her "and prepare a statement covering her testimony." Such statement was prepared and served on counsel for the United States seven days before the trial. When the case came on for trial, the statement was read. Olive testified orally at the trial and counsel for the United States fully cross-examined her both on the statement and her oral testimony.

Counsel for the United States objected to the consideration of the statement on the ground that it was not in question and answer form, that it contained conclusions of ultimate facts and hearsay statements, and that it included statements of transactions and conversations had between Olive and Alfred, which were inadmissible under 12 O.S.A. § 384, the "dead man's statute."

At the trial counsel for the United States stated that he did not think the statement contained anything false, but that he disagreed with some of the conclusions contained in the statement. The court then stated that it would not consider any of Olive's conclusions, nor any portion of the statement that was inadmissible or incompetent.

While the use of the statement in lieu of oral evidence was an unusual procedure, in view of counsel's statement that he did not think Olive had made any false statements, and that he only disagreed with some of the conclusions she had drawn from stated facts, the trial judge's statement that he would not consider any of Olive's conclusions or any part of the statement that would be inadmissible in evidence, and the fact that the case was tried by the court without a jury, we are of the opinion that the admission of the statement as evidence was not prejudicial.

The facts established by all the evidence considered in the light most favorable to the executrix are these:

Alfred and Olive were married on April 17, 1901. At that time she had accumulated approximately $400 from earnings as a school teacher and owned two head of cattle and some furniture. Alfred then owned a team of horses, double harness, and a wagon, worth approximately $150. He also owned 160 acres of land situated in Trego County, Kansas, worth approximately $250. For a time after their marriage they lived on a rented farm in Kansas, paying a share of the crops as rental.

In 1902, they moved to Cotton County, Oklahoma. Alfred made a homestead entry and later received a patent for the homestead from the United States. They built a house on the homestead. No crops were raised the first year. They kept a cow and chickens and sold butter and eggs. Alfred went to Texas during the harvest and threshing season. Olive remained on the homestead claim. In 1903, they rented two additional quarter sections of land and in the fall of 1903, Olive plowed with a five-horse team approximately 300 acres of land which was planted to wheat. In the winter of 1902 and 1903, Olive taught a country school. They pooled all the money that Alfred made from outside work and that Olive made from selling butter and eggs and teaching school. In 1905, they rented the homestead and moved to Walters, Oklahoma. Alfred became a collector for several Lawton firms, and Olive traveled throughout Cotton County writing crop insurance.

When they moved to Walters, they opened an account in the First National Bank of Walters in Alfred's name, but Olive deposited all the money she made in that bank account, as did Alfred. Both drew checks on the bank account as though it were a joint account. In 1905, Olive inherited approximately $500 which was deposited in that bank account.

In the meantime, three children had been born, the issue of Alfred and Olive.

In 1906, Alfred and Olive moved to Texola, Oklahoma. There they rented a building which they later purchased. They maintained an office in the building where they engaged in the business of lending money for Eastern investors on surrounding lands under the name "Western Land and Loan Company." Alfred inspected the land for which loan applications were made and Olive kept the books and records and wrote the loan papers and leases. They lived in the rear portion of the building. In the fall of that year, Olive established a bakery and engaged in baking and selling bread. They also engaged in selling land and Olive served meals to prospective land purchasers.

In the winter of 1906, Alfred was appointed postmaster at Texola. Olive worked in the post office. She performed most of the post office duties and Alfred spent most of his time inspecting the lands for loans and in selling lands. All of the money realized from the post office and from the work of Alfred and Olive was deposited in a single bank account in a Texola bank and on which both drew checks.

On January 1, 1909, Alfred resigned as postmaster at Texola and in February they moved to Tecumseh, Oklahoma. They opened a hardware store at Tecumseh. Alfred spent all of his time in the hardware store and Olive kept the books and records. In 1910, their last child was born. They remained in Tecumseh until 1912, when they moved to Houston, Texas. In Houston, Alfred engaged in the real estate business. Olive did not assist in that business.

In June, 1914, they moved back to Tecumseh and took over the management of the hardware store which they had placed in the charge of another during the time they resided in Houston. Olive clerked in the store, kept the books and records, and performed other duties in and about the store.

In 1916, they bought a hardware store in Walters, Oklahoma. Alfred took over the operation of that store and Olive conducted the store in Tecumseh. She had

the assistance of a clerk, but she clerked in the store, kept the books, and managed the business. About a year later, they bought a third hardware store at Binger, Oklahoma, and placed it in charge of a manager. All of the income from the hardware business was deposited in the joint bank account.

In 1919, Alfred inherited $400 from his father's estate. It was deposited in the joint bank account. In 1930, Alfred inherited from his mother's estate $1,076.57, which was placed in the joint bank account.

In 1922, Alfred and Olive moved to Norman, Oklahoma. They continued to own the hardware stores, but placed them under the management of others. They opened an office in Norman under the name of "Neel and Neel." They engaged in the sale of real estate and the making of farm and city loans and the writing of insurance and the buying, selling, and exchanging of merchandise. They purchased merchandise for their hardware stores. They continued that office under the name of Neel and Neel until the fall of 1922, when Alfred and Olive entered the Oklahoma University Law School as special students. Neither received a degree. However, in 1923 they passed the Oklahoma State Bar examination and were licensed to practice law. From 1923 to 1927, they practiced law in Norman, under the firm name of Neel and Neel. They also engaged in the sale of real estate and in oil and gas leasing. Olive spent her entire time in the law office. They maintained their home largely through the help of their children.

In 1927, they moved back to Tecumseh, Oklahoma, where they opened a law office and engaged in the practice of law, under the name of Neel and Neel. They also continued to operate the hardware stores and engaged in the writing of insurance. Alfred managed the hardware store, wrote the insurance, and spent part of his time in the law office. Olive devoted her time to the practice of law and the operation of a hotel. There was an oil boom in Pottawatomie County at the time. Olive examined abstracts of title for oil companies and oil and gas leases. They employed a younger lawyer to assist them in the law office. In the summer of 1931, they removed to Edinburg, Texas. They discontinued the law office at Tecumseh and the hotel, but continued to operate the hardware stores at Tecumseh and Walters, under managers.

They were licensed to practice law in Texas and opened a law office under the name of Neel and Neel. Alfred spent considerable time looking after land they had purchased in Texas and supervising the operations of the hardware stores. Olive devoted most of her time to practicing law.

In 1934, they removed to Walters, Oklahoma, primarily because the Walters store had been mismanaged and had become deeply in debt. On their return to Walters, Olive devoted her entire time to the hardware business. Alfred practiced law and also worked in the hardware store. That situation continued until Alfred's death in 1946.

In October, 1945, they sold the hardware store in Tecumseh and shortly before Alfred's death the hardware store in Walters. The proceeds from such sales were deposited in the joint bank account.

For many years their principal bank account was in the Security Bank in Norman, Oklahoma. They also maintained other bank accounts in towns in which they were living. The principal bank account in the Security Bank in Norman was in the name of A. C. or Olive Neel. The other bank accounts were either in the name of Neel and Neel, or Alfred C. Neel, but all of them were treated as joint accounts, and both Alfred and Olive drew checks on such accounts.

While most of the foregoing facts were established by the statement and the oral testimony of Olive, they were strongly corroborated by the testimony of R. W. Hutto, a banker at Norman, Oklahoma, who knew the Neels over a period of 50 years. Through their relations with banks with which Hutto was

connected, he became intimately acquainted with Alfred and Olive, the businesses which they conducted, and the manner in which they carried on their professional and business operations. He testified that through knowledge gained from his relations with them over a period of years, he understood they were jointly interested and were partners in a great many of their business activities.

In her oral examination, Olive testified that shortly after she and Alfred were married, some of their relatives criticized them because they did not restrict their activities to farming and were engaging in outside endeavors and that the relatives said they could make more money farming, and that Alfred stated "We will see what we can do as partners," and that they both agreed that they would both work in their joint endeavors; that when the Western Land and Loan Company project was first initiated, Frank Neel was to engage in that business with Alfred and Olive; that in a short time Frank withdrew from the undertaking, and she and Alfred agreed they would continue it as the Western Land and Loan Company.

There was no evidence that Alfred and Olive at any time took advantage of the claimed partnership relationship to reduce income tax liability.

The primary question presented is whether under the evidence the findings of the trial court are clearly erroneous.

■■ The existence of a partnership is a question of fact and the finding of such fact by the trial court will not be disturbed on appeal unless it is clearly erroneous.[1] A finding is clearly erroneous, even though there is evidence to support it, if the reviewing court on a consideration of the entire evidence is left with the definite and firm conviction that a mistake has been committed.[2]

■■ It is well established that a partnership is created by persons joining together their money, goods, labor or skill for the purpose of carrying on a trade, business, or profession, when there is a community of interest in the profits and losses.[3] A husband and wife may become partners for business purposes, even though the partnership relationship results in the decrease of their total tax liability.[4]

In Commissioner v. Tower, 327 U.S. 280, 290, 66 S.Ct. 532, 537, 90 L.Ed. 670, the court said:

"There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes."

■ Nevertheless, the courts will scrutinize a family arrangement and determine whether the parties really intended in good faith to join together their money, labor and skill for the purpose of carrying on a business as a bona fide partnership.[5]

In Eckhard v. Commissioner, 10 Cir., 182 F.2d 547, 549, the court said:

"And, while a husband and wife may engage in business as partners, we will scrutinize the family arrangement to determine whether in

1. Commissioner v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 90 L.Ed. 670; Bratton v. Commissioner, 10 Cir., 193 F.2d 416, 418; Trapp v. United States, 10 Cir., 177 F.2d 1, 4, certiorari denied 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339.

2. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147; H. F. Wilcox Oil & Gas Co. v. Diffie, 10 Cir., 186 F. 2d 683, 696.

3. Commissioner v. Tower, 327 U.S. 280, 286, 66 S.Ct. 532, 90 L.Ed. 670; Commissioner v. Culbertson, 337 U.S. 733, 740, 69 S.Ct. 1210, 93 L.Ed. 1659; Eckhard v. Commissioner, 10 Cir., 182 F.2d 547, 549; Trapp v. United States, 10 Cir., 177 F.2d 1, 4.

4. Commissioner v. Tower, 327 U.S. 280, 290, 66 S.Ct. 532, 90 L.Ed. 670; Commissioner v. Culbertson, 337 U.S. 733, 737, 69 S.Ct. 1210, 93 L.Ed. 1659.

5. Commissioner v. Tower, 327 U.S. 280, 289, 66 S.Ct. 532, 90 L.Ed. 670; Eckhard v. Commissioner, 10 Cir., 182 F.2d 547, 549; Bratton v. Commissioner, 10 Cir., 193 F.2d 416, 418.

the last analysis, the parties really intended in good faith to join together their money, labor and skill for the purpose of carrying on the business as a bona fide partnership. Each case must rest upon its own facts, but in determining the intent of the parties, the court will look at what the parties actually did to effectuate their avowed intentions. While investment of capital, skill and labor are essential attributes, they are not conclusive. In short, taxation being a practical matter, we should look through the form to the substance of their transactions."

■ In determining whether a husband and wife were bona fide business partners with respect to tax liability, the absence of a formal agreement and the failure to set up books as partners is not conclusive.[6] Neither is it essential that written articles of partnership be prepared and executed. A partnership agreement may be oral and may result from the acts and conduct of the parties clearly manifesting an intention to engage in a bona fide business partnership.[7]

It is not necessary to prove an express partnership agreement.[8] The agreement may be implied from conduct. In Weizer v. Commissioner, 6 Cir., 165 F.2d 772, 776, the court said:

"It is true that a partnership is based upon an agreement between the partners, but neither a written agreement [n]or an express oral agreement is necessary. It is well settled in partnership law that the agreement essential to a valid contract may be either expressed in words or implied from conduct."

The Supreme Court of Oklahoma in Quadrangle Petroleum Co. v. Kendrick & Eason Lumber Co., 120 Okl. 246, 249 P. 910, 913, stated that a partnership agreement may be either express or implied.

Here, immediately after their marriage, Alfred and Olive pooled their cash and other property. Thereafter, each made substantial contributions of labor and services to their joint undertakings in farming, business, and the practice of law. On occasions they engaged in separate activities, but always the earnings from such separate activities were placed in their joint bank accounts. Each exercised authority, control, and management over the various business endeavors in which they jointly engaged. Each contributed substantial vital services in carrying on their joint undertakings. Moneys that came to each of them through inheritance were placed in the joint bank accounts. Each had authority and in fact did draw checks on their several bank accounts.

In Commissioner v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, the court laid down the following test:

" * * * whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties *in good faith and acting with* a business purpose intended to join together in the present conduct of the enterprise."

There was no express agreement with respect to the division of profits and losses, but the capital contribution of each was approximately equal, and the

---

6. Eckhard v. Commissioner,. 10 Cir., 182 F.2d 547; Graber v. Commissioner, 10 Cir., 171 F.2d 32.

7. Seattle Renton Lumber Co. v. United States, 9 Cir., 135 F.2d 989, 991; . Replogle v. Neff, 176 Okl. 333, 55 P.2d 436, 438; Houston v. McCrory, 140 Okl. 21, 282 P. 149.

8. Weizer v. Commissioner, 6 Cir., 165 F. 2d 772, 776; Singer v. Shaughnessy, 2 . Cir.,.198 F.2d 178, 181.

services rendered by each were approximately equal. Losses incurred in the operation of one of the hardware stores decreased the capital account, and, no doubt, the joint bank accounts. They made no distribution of profits to themselves individually, but continued to accumulate their joint and several earnings in joint bank accounts and other capital accounts.

We are of the opinion that it may be reasonably and fairly implied that Alfred and Olive agreed to contribute capital, to contribute substantial services, and to jointly manage and carry on as partners their several farming, business, and professional enterprises, and to share equally in the profits and losses realized as bona fide partners.

Accordingly, we conclude that the findings of the trial court were not clearly erroneous and that the judgment should be and it is affirmed.