WELDON R. HUDSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hudson v. Commissioner
Docket No. 4363-88
United States Tax Court
T.C. Memo 1990-570; 1990 Tax Ct. Memo LEXIS 642; 60 T.C.M. (CCH) 1166; T.C.M. (RIA) 90570; October 30, 1990, Filed *642 Decision will be entered under Rule 155. Walker Arenson, for the petitioner. Jan W. Busby, for the respondent. GERBER, Judge
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent, in a notice of deficiency, determined deficiencies in income tax and additions to tax for petitioner, as follows: Additions to Tax Year
Income Tax
Sec. [1] 6653(a)(1)
Sec. 6661
1983
$ 77,586.49
*$ 3,879.32
$ 19,396.62
1985
19,974.69 *998.73
4,993.67
*643 Following trial respondent was permitted to amend his answer to assert deficiencies in income tax and additions to tax in the alternative, as follows: Additions to Tax Years
Income Tax
Sec. 6653(a)(1)
Sec. 6661
1983
[2] $ 4,905.95
None    None    1985
89,568.67
*$ 4,478.43
$ 22,392.17
*644 The issues presented for our consideration concern transactions involving real estate which took place over the period 1983 through 1985. [3] Specifically, we must decide: (1) Whether petitioner was a partner in the partnership with two other individuals, (2) whether petitioner realized income on receipt of an interest in the realty, as a partner or otherwise, (3) whether any income was realized in 1983 and/or 1985, and (4) whether the income should be characterized as ordinary or capital. FINDINGS OF FACT The parties have stipulated facts and exhibits all of which are incorporated by this reference. Petitioner (Hudson) resided in Austin, Texas, at the time *645 of the filing of his petition commencing this case. Petitioner was a self-employed real estate contractor and had been a "registered professional engineer" since 1959. Flora D. Naumann (Naumann) was self-employed as the owner and operator of a printing business. Ann Carter Lang (Lang) was self-employed as the owner and operator of a typesetting business. Lang began her business during 1979 and she used a room in Naumann's business location. Eventually, Lang needed more space for her business and Naumann did not have sufficient space for both businesses, so they contacted petitioner (whom Lang and Naumann had known "for a long time") to locate vacant real property on which the three of them could erect a building suitable for each of their business needs. Hudson set out to locate property and during 1983 located a 6.9-acre parcel of vacant land in which Lang and Naumann became interested. Hudson checked with the municipal government and determined that utilities would be available for the property. The realty was purchased on October 12, 1983, for $ 450,846 from Sam G. McDonald and it was titled in Lang's and Naumann's names. The purchase was accomplished by a $ 60,000 downpayment *646 made by Lang and Naumann, and a $ 390,846 note and mortgage from Lang and Naumann back to McDonald, the seller. The $ 60,000 downpayment was borrowed from James T. and Ann Lang (parents of Lang) and was evidenced by a note from Lang and Naumann. Petitioner did not pay any part of the down payment on the property. Prior to loaning the $ 60,000, Lang's parents wanted to be assured that petitioner would be responsible for the development and to make sure that it "fl[ies]." Petitioner paid about $ 1,500 in legal fees in connection with the acquisition of the property. On the first anniversary of note due to McDonald an interest payment of $ 39,084.60 and a $ 20,000.00 principal payment were due. Lang and Naumann borrowed that amount from Lang's parents in exchange for a note and mortgage deed in the amount of $ 139,600 (this was also a roll-over note which included both loans obtained from Lang's parents). Lang and Naumann opened a checking account in the name "ANDI Corporation" which they intended to use for purposes of operation of the real estate venture. The term "ANDI" is a combination of letters from the given names of Lang and Naumann. The checking account was to facilitate *647 the movement of funds to purchase the realty, construction activity, and, eventually, for deposit of rent and disbursement of expenditures regarding the building(s). No entity had actually been incorporated and the term "Corporation" in the checking account name was used only for appearances. With respect to the venture, Lang and Naumann were partners or joint venturers, with each person contributing equal amounts of capital and equal shares in the financial outcome. Petitioner, who initially did not have any interest in the realty, was responsible for the real estate expertise and construction. He was responsible for the acquisition, planning the subdivision, and building upon the property. The original objective was to provide office space for Lang, Naumann, and petitioner, and also to rent or sell subdivided space which would defray or reduce the cost of owning and operating the improvements to the realty. Petitioner took the proposed subdivision plan to municipal officials and was advised that they would lose their grandfather rights to utilities if they subdivided the property. Accordingly, petitioner, Lang, and Naumann set out to develop a single building on the entire *648 tract, but could not obtain financing for the project. Due to their inability to obtain financing, the three individuals decided to sell the realty. Although there were earlier inquiries concerning the realty, the sale was delayed until after the holding period for long-term capital gains had been satisfied. On November 21, 1984, (after the property had been purchased by Lang and Naumann), petitioner, Lang, and Naumann entered into a document entitled "Venture Agreement" containing the following language: 1. Parties. This Agreement is between ANN LANG, DIAN NAUMANN and WELDON R. HUDSON. 2. Predicate. Record title to a certain tract of land is held in the name of Ann Lang and Dian Naumann. Notwithstanding that fact, Lang, Naumann and Hudson are each owners of a one-third undivided interest in said property. The property is more particularly described as follows: * * * 3. Alienation Agreement. It is understood and agreed that the interest of a party will not be sold without first offering same to the other two parties. Furthermore, it is understood and agreed that the parties own and hold such property by agreement as joint tenants with right of survivorship *649 so that if any party dies, the interest of that party in this land will pass to the surviving owners subject however to any debt against same. On December 10, 1984, Lang and Naumann entered into an escrow agreement with Richard D. Frazier, Trustee (Frazier) to sell the realty for $ 1,055,000. The sale took place on March 7, 1985. Fifty thousand dollars of the sales price was paid in advance (under the escrow agreement) and the $ 1,005,000 balance was satisfied by a note and mortgage deed from the buyer. The note carried 12-percent interest payable monthly and was payable in full six months from March 7, 1985. Upon receipt of each monthly interest payment on the note during 1985, it was divided one-third each for petitioner, Lang, and Naumann. The note was satisfied during 1985. Petitioner's name does not appear on any of the purchase or sale documents concerning the original acquisition or the eventual sale of the subject realty. After payment of the notes and liens on the property, the net proceeds of sale was divided into equal one-third shares for Lang, Naumann, and petitioner. A total of $ 60,232 in interest was accrued and paid on the $ 1,005,000 note. The net sales *650 price of the realty was $ 1,048,846.50, after reduction for $ 6,153.50 in selling expenses. The total basis in the property as of March 7, 1985, was $ 459,362.97. The overall gain from sale of the property was $ 589,483.53. For 1985 interest income on the property was $ 700.61, interest expense was $ 62,203.34, and real property tax paid was $ 14,946.58. Net distributions were made during 1985 to petitioner, Lang, and Naumann in the amounts of $ 181,758.33, $ 181,808.24, and $ 181,808.24, respectively. No partnership returns (Forms 1065) were filed in connection with these transactions. Petitioner did not report interest income or claim interest expense in connection with these transactions. Petitioner reported $ 147,284.99 of the net proceeds as a long-term capital gain on his 1985 income tax return. Of the $ 147,284.99, only $ 58,914 was included in petitioner's taxable income because of the 60-percent statutory adjustment reducing net long-term capital gain income for the 1985 taxable year. Respondent, in the notice of deficiency, determined that petitioner failed to report $ 19,983 in taxable income for 1985 in connection with the real estate transaction. Respondent *651 also determined that petitioner should have claimed $ 20,455 in interest and tax deductions in connection with the realty for 1985. Additionally, respondent determined that petitioner realized and failed to report ordinary income in the amount of $ 150,312.67 in connection with the real estate transaction during his 1983 taxable year. In this connection respondent determined that petitioner was a one-third partner in the realty which he had received for his services in 1983. The $ 150,312.67 was derived by dividing the $ 450,938 cost by three. By an amended answer, respondent alleged, in the alternative, [4] that petitioner was not a partner or joint venturer and did not receive $ 150,312.67 of ordinary income in 1983, but instead, received ordinary income of $ 161,681.33 "as compensation for services rendered in connection with the purchase, attempted subdivision, attempted development, and sale of certain real property held by the 'ANDI' partnership." For purposes of his alternative position, respondent alleged that the adjustments in the amounts of $ 19,983.50 (for additional income from sale) and $ 20,455 (for interest and taxes) should be reversed in the 1985 taxable year. *652 OPINION Respondent argues alternative theories, one of which rests upon the premise that petitioner was a partner and the other upon the premise that petitioner was not a partner. Petitioner, consistently argues that he was a partner at all times, including the time when the realty was acquired. We hold that petitioner was not a partner at the time that the realty was acquired or any other time in connection with the subject realty. "[A] partnership is created 'when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses'." Commissioner v. Culbertson, 337 U.S. 733, 740 (1949), *653 quoting Commissioner v. Tower, 327 U.S. 280, 286 (1946); Hensel Phelps Construction Co. v. Commissioner, 74 T.C. 939, 951 (1980), affd. 703 F.2d 485 (10th Cir. 1983).We must determine whether the parties intended to join together to share their abilities and capital, and to share in the profits and losses. A partnership may informally exist for tax purposes even without a written partnership agreement. See Eckhard v. Commissioner, 182 F.2d 547 (10th Cir. 1950); Paul v. Commissioner, T.C. Memo. 1957-170. In this case petitioner, Lang, and Naumann testified that they intended to join together to locate land and build rental property, some of which was to be occupied by each of the three individuals to operate their separate businesses. Further, petitioner argues that he, Lang, and Naumann were equal partners who informally formed a partnership, which later was reduced to writing. The facts of this case do not support petitioner's contention that he was a partner with Lang and Naumann. The November 21, 1984, agreement contained the statement that petitioner was owner of "a one-third undivided *654 interest." If the agreement had ended at that point, it would have lent some support to petitioner's position that he was a partner. He would have had an indefeasible fee interest in the realty, which represented the only asset of the alleged partnership. The agreement, however, contains the conditional terms that each of the three individuals' "interest * * * [could] not be sold without first offering * * * [to] the other two parties" and was to be held "as joint tenants with right of survivorship so that if any party dies, the interest of that party * * * will pass to the surviving owners subject however to any debt against same." These additional terms are, at best, contradictory to the initial attempt to grant ownership and ambiguous regarding petitioner's ability to transfer or assign his interest. Essentially, petitioner could not sell his interest in the realty without offering it to Lang and Naumann. Moreover, there are no terms under which Lang and Naumann would be required to exercise or default upon their first refusal. Finally, petitioner and his heirs, under these conditional terms, would not be entitled to anything unless the property was sold at a time when petitioner *655 was alive. Additionally, the agreement was of no import in any of the transactions involving the purchase or sale of the realty and had no rational chronological relationship to the complete series of transactions resulting in the sale. More importantly, the agreement did not, for tax purposes, create a partnership or joint venture between petitioner, Lang, and Naumann. Lang and Naumann were not required, because of the conditional and precatory nature of the agreement, to share equally with petitioner the interest income and the net proceed of sale. The facts of this case imply that Lang and Naumann were not interested in taking petitioner in as a partner, but that they were interested in utilizing his expertise and services. Petitioner's name was not on the bank account, title, notes, or any other document (other than the so-called Venture Agreement) which reflected the existence of a joint venture between Lang and Naumann. It is most telling that petitioner's name was not on the notes to Lang's parents or to the seller from whom the property was purchased by Lang and Naumann. It appears that the November 21 agreement was devised as an afterthought to obtain capital gains *656 treatment for petitioner. [5]
Respondent alternatively argues that: (1) Petitioner (whether a partner or not) received ordinary income equal to one-third the fair market value of the realty at the time of acquisition in 1983, without regard to the outstanding liens and encumbrances upon that property, or (2) that petitioner was not a partner and received ordinary income in 1985 for his services rendered in connection with the purchase, attempted subdivision, attempted development, and sale of the realty. Respondent's alternative theory, which rests upon the premise that petitioner *657 was a partner, is mooted by our holding that petitioner was not a partner with Lang and Naumann. If property is transferred in connection with the performance of services, section 83(a) requires the service provider to include in gross income the excess of the fair market value of property transferred over the amount of money paid (if any) for such property. Pursuant to section 83(a), such income is recognized in the year that the rights to the property are transferable or not subject to a substantial risk of forfeiture. Under section 83, if petitioner performed or was required to perform services in exchange for realty, the "fair market value of property transferred" to him would be includable in petitioner's gross income. In this case, the realty was acquired by Lang and Naumann in 1983, but there is no showing that petitioner had an interest in the property in 1983 or that he was paid anything in exchange or performed any meaningful amount of services in connection with the property acquisition. Accordingly, no taxable event occurred within the meaning of section 83 during the 1983 *658 taxable year. On November 21, 1984, petitioner entered into the "Venture Agreement" with Lang and Naumann which purported to pass a one-third interest in the realty to petitioner. The Venture Agreement was entered into after it was known that the property could not be subdivided and that financing could not be obtained to build a single building on the land. It was also entered into at a time when petitioner, Lang, and Naumann knew that the property would be sold for a substantial profit and Lang and Naumann "owed" petitioner for his role in finding and selling the realty. The only meaningful purpose for the Venture Agreement was to attempt to obtain capital gains treatment with respect to income petitioner would receive for his services performed for Lang and Naumann in connection with the acquisition and sale of the realty. Under these circumstances we hold that the "Venture Agreement" should be disregarded for tax purposes. Gregory v. Helvering, 293 U.S. 465 (1935). During the 1985 taxable year petitioner received payments from Lang and Naumann which were from the proceeds of sale of the realty and interest income received from the buyer. We find that those *659 amounts represented compensation and must be characterized as ordinary income. Our holdings that the "Venture Agreement" is to be disregarded and that petitioner did not receive property, other than cash, obviates the need to determine the fair market value of the realty and/or whether petitioner gave anything in exchange for an interest in the realty for purposes of section 83 and the partnership provision. The measure of petitioner's compensation here is the amount of cash he received. Respondent determined that petitioner is subject to additions to tax under section 6653(a)(1) and (2) for both years in issue. In his alternative approach in the amended answer respondent did not allege that an addition under section 6653(a)(1) and (2) would apply for the 1983 taxable year. Due to our holding and respondent's alternative position regarding the taxable year 1983, the section 6653(a)(1) and (2) additions to tax need only be considered for the 1985 taxable year. Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the deficiency if any part of the deficiency is due to negligence *660 or intentional disregard of rules or regulations. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the deficiency attributable to negligence or intentional disregard of rules or regulations. Under section 6653(a), negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct and the taxpayer has the burden of proving the determination is erroneous. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982);Rule 142(a). We hold that petitioners have carried the burden of showing that the addition to tax under section 6653(a) is not applicable under the circumstances of this case. Petitioner reported $ 147,284.99 of the net proceeds as a long-term capital gain on his 1985 income tax return. We have found that the amount reported should be increased (taking into consideration the amount already reported) to reflect the amount distributed to him as part of amounts paid to him during 1985. *661 This amount will exceed the $ 147,284.99 reported, but the significant monetary difference between petitioner's reporting of the income and our holding lies in the characterization of the income as ordinary, rather than capital. That distinction, in the setting of this case, does not amount to negligence or intentional disregard of the rules and regulations on the part of petitioner. The relatively unsophisticated modus operandi of petitioner, Lang, and Naumann presented many different possibilities for the incidence of tax, three of which have been, at different times, alternatively argued or determined by respondent. After all is said and done, we have found that petitioner reported the income in the correct year. We note that it took respondent three tries before reaching a position which was relied upon at trial. Clearly petitioner, Lang, and Naumann were unsophisticated as to tax matters, operated informally, and attempted to obtain tax benefits, but that does not provide a basis for finding negligence in this case. Respondent also determined additions to tax pursuant to section 6661(a) for the 1983 and 1985 taxable years. Similar to the negligence addition, respondent *662 conceded the section 6661 addition for the 1983 taxable year in his alternative position. Section 6661 provides for an addition to tax when a substantial understatement of income tax occurs, i.e., an understatement that exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. The amount of the addition to tax under section 6661(a) is equal to 25 percent of any underpayment attributable to the substantial underpayment. Pursuant to section 6661(b)(2)(B)(i), where the item is not a tax shelter, the understatement may be reduced by the amount of any items which were based on substantial authority. Court cases and Treasury regulations construing the Internal Revenue Code are considered substantial authority. Sec. 1.6661-3(b)(2), Income Tax Regs.Substantial authority exists if the weight of authorities supporting the tax treatment is substantial in relation to the weight of authorities supporting contrary positions. Sec. 1.6661 -3(b)(1), Income Tax Regs. The weight of authorities depends on their persuasiveness and relevance. *663 A case having some facts in common with the tax treatment at issue is not particularly relevant if it is materially distinguishable on its facts. Sec. 1.6661-3(b)(3), Income Tax Regs.
On this record we conclude that petitioner had substantial authority for his position. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years under consideration. Rule references are to this Court's Rules of Practice and Procedure.↩
*. Plus 50 percent additional interest on the deficiency under section 6653(a)(2)↩.
2. After eliminating the adjustment to income concerning the realty transaction for 1983, an income tax deficiency, in a reduced amount, would result. Apparently, petitioner does not contest the other adjustment for 1983 because he has not addressed them, either at trial or on brief. The remaining deficiency should be addressed by the parties in the Rule 155 computation.↩
*. Plus 50 percent additional interest on the deficiency under section 6653(a)(2)↩.
3. Originally, three individuals were involved in the real estate transaction. Petitioner's case was consolidated with the case of Flora Dian Naumann, another of the three individuals involved in the real estate transaction. Miss Naumann settled her controversy with respondent and her case was severed leaving petitioner's case for our consideration.↩
4. Respondent, on brief, argues the alternative position set forth in his amended answer as his primary position and the determination in the notice of deficiency as his secondary position.↩
5. The tax consequences to petitioner were less favorable under respondent's determination, if we decided he was a partner. This would have been so because respondent determined that petitioner was not entitled to any part of the debt outstanding against the property in the computation of his partnership interest. Under those circumstances, he would have had to recognize substantially more income (approximately one-third of $ 1,055,000).↩