**ENDICOTT TRUST COMPANY, as Executor of the Estate of Merlin J. Barret, Deceased, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 67–CV–13.**

United States District Court
N. D. New York.

July 10, 1969.

Smith, Leasure & Gow, Endicott, N. Y., for plaintiff.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., for defendant.

Memorandum-Decision and Order

PORT, Judge.

Merlin J. Barret, at the time of his death, held 500 shares of Fruehauf Trailer and 1100 shares of I.B.M. common stock jointly with his surviving wife Estella, valued at $13,268.75 and $220,886.25 respectively. It is the inclusion of the total value of these securities in the gross estate of the decedent, that gives rise to the narrow and, apparently, first impression question presented by the plaintiff's motion for summary judgment.

The parties upon the oral argument of the motion agreed, and the defendant in its brief [1] concedes, that there are no factual issues.

---

[1] "The facts in this case are relatively simple and not in dispute." Defendant's Brief at page 2.

The facts in this proceeding are not complicated. Between September 21, 1946 and January 28, 1954, Merlin J. Barret, with his own funds, accumulated 256 shares of I.B.M. common stock in his and his wife's (Estella Barret) names as joint owners, at a total cost of $32,252.25.

During February 1954, the deceased sold the above 256 shares for $68,516.78, leaving a net gain of $36,246.53 over cost. The proceeds were deposited in the joint checking account of Merlin and Estella Barret.

On April 20, 1956, $18,544.40 was withdrawn from the joint checking account and used to purchase 500 shares of the common stock of Fruehauf Trailer, which were again held in joint tenancy. On May 1, 1956, $49,252.15 was similarly withdrawn from the joint checking account and used to purchase 100 shares of I.B.M. common stock in joint tenancy.

On the date of Merlin Barret's death, the Fruehauf stock was worth $13,268.75 and the I.B.M. worth $220,886.25. Merlin Barret's estate tax return reported a total of $458,715.86, upon which an estate tax of $36,750.71 was assessed.

Claiming that $62,051.00 [2] should have been excluded from the gross estate of the decedent, the plaintiff, after having made a claim for a refund of $8263.10, the amount of tax attributable to said sum, which was denied, brought this suit for the tax allegedly illegally and erroneously assessed and collected. The defendant's position is simply that the full value of the Fruehauf and I.B.M. stock was properly included in the gross estate as jointly held property under the provision of § 2040 of the Internal Revenue Code of 1954 (26 U.S.C. § 2040).[3]

The plaintiff contends that the $62,051.00 represents "such part of the value of such property [Fruehauf and I.B.M. shares] as is proportionate to the consideration furnished by such other person" [the surviving wife], and accordingly is excepted from decedent's gross estate by virtue of the first proviso of § 2040.

To reach the above result, the plaintiff argues that the purchase between 1946 and 1950 of the initial I.B.M. stock with funds in deposit in the joint checking account gave rise to a gift by the decedent of 50% of the stock to his surviving wife. Upon the sale of this stock in 1954, a capital gain of $36,246.53 having been realized, one-half ($18,123.27) became the property of the surviving wife. The plaintiff claims that this $18,123.27 of the capital gain was rein-

---

2. Plaintiff contends that the original purchase of the I.B.M. stock in joint tenancy equaled a gift of one-half to Estella Barret. When these stocks were sold for a net gain of $36,246.53, one-half of this gain belonged to Estella Barret, i. e., $18,123.27. Plaintiff further claims that when the reinvestments in Fruehauf and I.B.M. were made in 1956, that $17,966.09 of her $18,123.27 was used as her contribution towards the $67,796.55 total purchase price; this works out to 26.5%. Therefore, 26.5% of the value of these shares on the date of decedent's death equaled her contribution, and should be excludible in the eyes of the plaintiff. 26.5% of the value at the date of death was $62,051.00.

3. § 2040. *Joint interests*
   The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person:
   * * *

vested in the stock held jointly at the decedent's death, and that the value of the shares so purchased with the $18,123.27 amounted to $62,051.00 of the total value of all the stocks held at the date of death.

The property in question was held in joint tenancy at time of death, hence it is all includible in the gross estate unless an applicable exception can be found to § 2040. The plaintiff cites Regulation 20.2040–1(c) (5),[4] Harvey v. United States, 185 F.2d 463 (7th Cir.1950); Swartz v. United States, 182 F.Supp. 540(D.Mass.1960); and First National Bank of Kansas City v. United States, 223 F.Supp. 963 (W.D.Mo.1963) in support of its position.

However, neither the Regulation nor the cases cited support the position of the plaintiff. In the cases above-cited, the income, profits, appreciation or gain that was treated as the contribution of the survivor, resulted from the ownership by the survivor of property which the decedent had given to the survivor as an *outright*, "no-strings attached" gift; consequently, the "income belonged to [the survivor]." The interest of the survivor herein in the capital gain resulting from the sale of the initial I.B.M. stock, never "belonged to" her in that sense. It was always joint property, subject to a right of survivorship in the other joint tenant (the decedent).

The plaintiff's claim is founded on the concept of a gift of one-half of the jointly held original I.B.M. shares under local New York property law. This does not afford a firm foundation:

> The obvious scheme of § 2040 is to recapture the entire value of jointly-held property into a decedent's gross estate, notwithstanding the fact that the decedent may have made a gift under local law of one-half of the property. Section 2040 looks to the source of the consideration represented by the property and disregards legal title. Estate of Peters v. Commissioner of Internal Revenue, 386 F.2d 404, 407 (4th Cir.1967).

The surviving widow and the decedent at all times held their property as joint tenants with a right of survivorship. Changing the character of the property but not the character of the ownership, will not or should not permit an escape from taxation as joint property, unless so excepted by statute.

In this case, the decedent chose to consistently keep practically his entire estate in the form of joint ownership with a right of survivorship in his wife. Having done so, his property must be taxed as such upon his death. To have avoided taxation as joint property, decedent was obliged to avoid this form of ownership. See, e. g., 34 Am.Jur.2d Federal Taxation (1969) para. 8610.

Although the defendant has not moved for summary judgment, its award appears appropriate in the instant situation. Local 453, International Union of Electrical, Radio and Machine Workers, A.F.L.–C.I.O. v. Otis Elevator Co., 314 F.2d 25 (2d Cir.1963); Local 33, International Hod Carriers Building and Common Laborers' Union of America v. Mason Tenders, 291 F.2d 496 (2d Cir. 1961); 6 Moore's Federal Practice (1966) para. 56.12, fn. 5. There are no factual issues. The only claim which the plaintiff asserts relates to the use of the appreciation on the sale of the original I.B.M. stock, to purchase the 1956 stock. Assuming this to be the fact, as has been done, and finding that such use of the appreciation fails to bring the

---

4. § *20.2040–1 Joint interests*
       *       *       *       *       *
   (5) If the decedent, before the acquisition of the property by himself and the other joint owner, transferred to the latter for less than an adequate and full consideration in money or money's worth other income-producing property, the income from which belonged to and became the other joint owners entire contribution to the purchase price, then the value of the jointly held property less that portion attributable to the income which the other joint owner did furnish is included in the decedent's gross estate.

jointly held property within the exceptions provided in § 2040, the defendant is entitled to summary judgment in its favor, dismissing the plaintiff's complaint.[5]

---

5. In this type of situation, Stein v. Oshinsky, 348 F.2d 999, 1002 (2d Cir.) cert. denied 382 U.S. 957, 86 S.Ct. 435, 15 L.Ed.2d 361 (1965) sheds some light on the proper disposition herein. In that case the court, in reviewing a verdict of summary judgment for the plaintiff, reversed and sent the case back with directions to dismiss the complaint stating:

"Plaintiffs' attorney has consistently maintained that all the facts are contained in the complaint and are before the court; he did not indicate in argument that any facts warranting a different decision could be alleged or proved. Under these circumstances, we perceive no reason for not bringing this litigation to an end. See 6 Moore, supra, Para. 56.12, 56.13, 56.27 [2]."