ESTATE OF JACK ROBINS ENSLEY, BENI MARIE ENSLEY MOORE, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Ensley v. Commissioner
Docket No. 10759-75.
United States Tax Court
T.C. Memo 1977-402; 1977 Tax Ct. Memo LEXIS 39; 36 T.C.M. (CCH) 1627; T.C.M. (RIA) 770402; November 21, 1977, Filed *39 Held: A small part of the property owned jointly by decedent and his wife at the time of his death was attributable to contributions by his surviving wife and is not taxable in decedent's estate. Amount determined. George M. Mott, *40 for the petitioner. Thomas L. Kummer, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $66,237.96 in the estate tax of the estate of Jack Robins Ensley. Because of concessions by petitioner, the only issue we must decide is what part of property jointly owned by decedent and his wife is properly includable in decedent's gross estate under section 2040, I.R.C. 1954. [1] Petitioner claims respondent erroneously included the entire value of their joint property in decedent's gross estate, arguing that one-half the value of the joint property is attributable to his wife's contributions. FINDINGS OF FACT Certain facts have been stipulated and are found accordingly.
The petitioner is the estate of Jack Robins Ensley. The petition was filed by Beni Marie Ensley Moore as executrix of the estate of her husband, Jack Robins Ensley (decedent) who died on January 14, 1972. Beni Marie Ensley Moore will hereinafter *41 be referred to as petitioner. The Federal estate tax return for the decedent's estate was filed with the District Director of Internal Revenue, Indianapolis, Ind., on October 13, 1972. Petitioner and decedent were married on January 17, 1953, and remained married until decedent's death. The record contains only limited details regarding decedent's net worth at the time he married petitioner. Apparently, decedent owned two principal assets. One was a tract of property located at 62nd Street and North Keystone in Indianapolis, Ind. The property included approximately 16 acres of land on which decedent operated a golf driving range and amusement park (kiddyland, miniature golf, and archery range) known as "Little America." Decedent purchased the tract from the Hornbecks under a conditional sales contract entered into on May 25, 1944. Decedent placed $10,000 down, took possession, and paid another $62,000 over to the sellers in monthly payments of $600 a month from May 25, 1944, to May 25, 1954. Title to the property subject to the conditional sales contract was conveyed by the sellers to decedent and petitioner on May 25, 1954. Decedent's other main asset was a restaurant, *42 called the "Jaguar Room," housed in a leased building in Indianapolis. He owned the equipment and furnishings subject to certain liabilities. Apart from these facts petitioner (the only witness in this case) did not know what decedent's equity was at the time of their marriage. The 62nd Street property was mortgaged twice to secure loans. On May 25, 1954, the date title to the property was transferred to the Ensleys, they obtained a $75,000 loan from College Life Insurance. Except for the final payment due on the conditional sales contract paid by separate check to the Hornbecks, the loan proceeds were disbursed to the Ensleys. The loan balance was reduced to $69,715.86 by January 9, 1956, when they refinanced with College Life Insurance. Out of the proceeds of this second loan, the first loan was paid and, after expenses, the Ensleys received an additional $25,010.44. In 1955 the Ensleys sold an option to buy a majority of the 62nd Street property to Glendale Center, Inc., at $25,000 an acre. In 1960 10.991 acres of the land were sold to Glendale Center for $274,775 (10.991 acres at $25,000 an acre). This amount was paid to the Ensleys as follows: Cash Received
Applied to
by Ensleys
Purchase Price
Payments on Option
1955- 1960
$ 15,000.00
$ 12,000.00
1962
25,000.00
* 35,000.00
1964
20,000.00
20,000.00
1965
20,000.00
20,000.00
Pay Off of Ensley Loans
1962 - Merchants National Bank
$ 65,000.00
1966 - American Fletcher National Bank
97,365.76
Final Settlement
5-11-66 - Cash to Ensleys
19,676.21
19,676.21
Real Estate Taxes
3,845.53
Other Expenses
1,887.50
Total
$274,775.00
*43 Proceeds from the sale to Glendale Center, Inc., were used to purchase parcel 9, known as the 56th Street Property. Other parcels from the 62nd Street Property were sold as follows: In 1962 three tracts were sold, one for $90,530 under an installment contract and the other two for amounts not shown in the record. In 1964 a parcel was sold for $75,000, of which $49,000 was received in 1964. In 1967 a tract was sold for $40,000 cash. In 1968 or 1969 two parcels were sold, one for $100,000 cash and the other for an amount not indicated in the record. Funds realized from these sales generally were used to improve and expand the 56th Street Golf Center. Petitioner had no separate assets at the time of her marriage to decedent. She had been a payroll clerk and bookkeeper and worked for decedent for about a year and a half before they married. From the time the decedent and petitioner were married in 1953 until the decedent's death in 1972, they were engaged in various businesses.These consisted of restaurants (the Jaguar Room, Martinique, Jack and Georges, *44 Red Carpet, and George's Tenderloin), golf driving ranges, and amusement centers (Little America, 56th Street Golf Center, Anderson Golf Center, and Storyland), and foreign and sport car dealerships. Except for the Anderson Golf Center in Anderson, Ind., and Storyland in Florida, all these businesses were located in Indianapolis. The scope of petitioner's activities in the operation of the businesses was broad. In the restaurant and golf center operations, she handled the daily routine, including employing and terminating employees, bookkeeping and payroll, purchasing equipment, purchasing merchandise for resale, and handling insurance and inventories. However, she never drew a salary from any of the businesses or entered into a written partnership or other agreement to share profits with the decedent.
Petitioner maintained an office in her home, where much of her business activities was carried on; she also spent much of her time at all the business locations. During their marriage, she and the decedent resided part of the time adjacent to Little America, and they also resided on the property on which the 56th Street Golf Center was located. The decedent's activities in *45 connection with these businesses were those of a promoter, such as greeting people in the restaurants. He was not a "detail man" and was not heavily involved in the daily operations of the businesses. He also devoted a substantial amount of time to automobile racing in the United States, Mexico, Canada, and England, and these activities continued until approximately 2 years before his death.Through these activities he became well known in Indianapolis, which added to his value as a promoter. The racing activities were an expensive hobby and were not carried on for financial gain. The major management decisions regarding the businesses operated by the decedent and petitioner, such as the sale and purchase of real estate and obtaining loans through mortgaging real estate, were joint decisions. The most successful businesses conducted by the decedent and petitioner were Little America and the 56th Street Golf Center, and it was to these businesses that petitioner devoted the major part of her time and abilities. The decedent devoted little time to these businesses and, because he had a drinking problem, petitioner did not want him to spend much time at them. The decedent's *46 wages, the net profit from businesses, and the total joint adjusted gross income (AGI) reported by the Ensleys on their joint income tax returns were as follows: [1] 1959
1960
[1] 1964
1965
1966
Jack Ensley's wages
$9,450
$8,750
Little America
6,649
4,925
56th St. Golf Center
($3,704)
($2,134)
($18,931)
Anderson Golf Center
Martinique
(15,508)
(24,977)
Jack & George's
(29,764)
George's Tenderloin
(21,478)
Joint AGI [3]
$29,533
$16,320
($34,839)
($42,356)
($21,216)
1967
1968
1969
1970
1971
Jack Ensley's wages
Little America
56th St. Golf Center
$3,157
($8,088) [2]
$2,990 [2]
$43,122
$49,568
Anderson Golf Center
( 6,494)
Martinique
Jack & George's
George's Tenderloin
Joint AGI [3]
$6,538
($3,297)
$12,170
$69,564
$139,085
The Ensleys' jointly owned *47 properties had a net fair market value of $814,681 (rounded) at the date of decedent's death. Their joint assets and liabilities were as follows: Land
Improvements
Total
Parcel 1
$ 8,000
$ 8,000
2
102,000
102,000
3
35,000
35,000
4
25,000
25,000
5
25,000
25,000
6-8
211,000
211,000
9
446,000
$129,000
575,000
10-11
29,700
29,700
12
73,000
73,000
13
9,100
9,150
18,250
14
65,000 [2]
$963,800
$138,150
$1,166,950
Less: Encumbrances
329,008
Net fair market value of real
estate
837,942
Net fair market value of other
assets
(23,261)
Total net fair market value
$814,681
The jointly owned real estate was purchased in these transactions: On March 10, 1960, parcels 9 and 13 [3], 56th Street Golf Center properties, were purchased for $168,000. The purchase terms are not disclosed in the record, except that the property was subject to two mortgages. On October 2, 1965, parcel 12, also a 56th *48 Street Golf Center property, was acquired for $75,000, with a $10,000 downpayment and payments of $500 per month. On October 11, 1965, parcels 6-8 were bought for a price not revealed in the record. On November 8, 1966, parcel 14, their residence, was bought for $65,000, with a $5,000 downpayment and payments of $2,500-$5,000 at various intervals. On March 24, 1967, parcel 5 was acquired for $25,500, with a $2,500 downpayment and payments of $200 per month (paid semi-annually). On March 28, 1967, a parcel was purchased for $40,000, with a $5,000 downpayment and payments of $3,500 per year. Of these amounts, 29.2 percent is allocable to parcel 1. On July 13, 1967, parcels 10 and 11 were bought for $18,500, with a $3,000 downpayment and semi-annual payments of $750. On September 11, 1967, parcel 4 was purchased for $33,000 with a $6,500 downpayment and payments of $200 per month. In March 1971, parcels 2 and 3 were acquired for $121,985, with a $10,000 downpayment and payments of $7,500 per year. The Ensleys had three children, born in 1954, 1956, and 1958. A fire in the Ensleys' home in 1970 destroyed many of the records of the Ensleys' businesses. ULTIMATE *49 FINDINGS OF FACT Petitioner and decedent had at least an informal understanding to share profits from the businesses. And her services in the businesses, especially the 56th Street Golf Center, were at least equal in value to those performed by decedent. However, the monetary value of her service contributions was not shown, and most of her share of joint business profits is not traceable to their properties jointly owned at decedent's death. OPINION At issue is what part of the property jointly owned by the Ensleys at the date of decedent's death originally belonged to petitioner, the surviving joint owner. Under section 2040 decedent's gross estate includes the full value of the jointly held property-- except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to *50 have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: * * *. The regulations interpret this language as follows: In all other cases, the entire value of the property is included except such part of the entire value as is attributable to the amount of the consideration in money or money's worth furnished by the other joint owner or owners. See § 20.2043-1 with respect to adequacy of consideration. Such part of the entire value is that portion of the entire value of the property at the decedent's death (or at the alternate valuation date described in section 2032) which the consideration in money or money's worth furnished by the other joint owner or owners bears to the total cost of acquisition and capital additions. In determining the consideration furnished by the other joint owner or owners, there is taken into account only that portion of such consideration *51 which is shown not to be attributable to money or other property acquired by the other joint owner or owners from the decedent for less than a full and adequate consideration in money or money's worth. The entire value of jointly held property is included in a decedent's gross estate unless the executor submits facts sufficient to show that property was not acquired entirely with consideration furnished by the decedent, or was acquired by the decedent and the other joint owner or owners by gift, bequest, devise, or inheritance. [Sec. 20.2040-1(a)(2), Income Tax Regs.] These provisions place a difficult burden of proof on petitioner who seeks to exclude from decedent's gross estate the value of joint property attributable to her contributions. First, she must prove the value of the joint property attributable to her contributions in money or money's worth. Also, she must show her contribution never to have been received by her from the decedent for less than an adequate and full consideration in money or money's worth. Briefly stated, petitioner's position is that all the property jointly owned as of the date of decedent's death was acquired *52 during her marriage to decedent, and that her contribution towards the acquisition of these properties was in the form of services she rendered in the businesses. She contends her participation in the businesses was equal to that of decedent, and only half the joint property should be included in her husband's estate. Respondent argues that her services were not a contribution of separate property in money or money's worth, that petitioner has failed to trace any of her contributions to specific items of joint property, and that the source of funds for the joint properties is traceable to decedent's original investment in the 62nd Street property. Thus respondent claims petitioner has not carried her burden of proof, and that the full value of the jointly held property is includable in decedent's gross estate. Where a husband and wife operate a business under a partnership or other agreement to share profits and jointly held property is acquired with the profits of that business, each spouse's services constitute full and adequate consideration for the funds received from each other used *53 to purchase the property. Berkowitz v. Commissioner,108 F. 2d 319 (3d Cir. 1939); United States v. Neel,235 F. 2d 395 (10th Cir. 1956); Singer v. Shaughnessy,198 F. 2d 178 (2d Cir. 1952). However, services rendered out of love and affection or legally required under a marriage contract do not constitute consideration in money or money's worth. Bushman v. United States,8 F. Supp. 694 (Ct. Cl. 1934) (wife's services to husband in his law practice and in managing family real estate investments rendered out of love and affection, and spouse never valued her services to provide basis for valuing her contribution to joint property); Estate of Loveland v. Commissioner,13 T.C. 5 (1949) (wife's nursing services to husband legally required under marriage contract and thus not consideration in money or money's worth). We are satisfied by petitioner's testimony that she and decedent had at least an informal understanding to share profits and that her services in the businesses, especially the 56th Street Golf Center, were at least equal in value to those performed by decedent. The difficulty for *54 petitioner is that she has not shown the monetary value of her services or traced the profits from the businesses as the source of funds for the jointly owned properties. For these problems, she relies on Estate of Otte v. Commissioner,T.C. Memo. 1972-76. In that case the decedent purchased a farm in his own name for a small downpayment and took out a mortgage for the balance. He and his wife worked together on the farm, paid off the mortgage, and acquired other joint properties with their joint income. Twenty-six years after acquisition, he transferred title to himself and his wife as tenants by the entirety. Valuing the wife's services was solved by a finding that her income share of the "jointly acquired" property was 50 percent, and the tracing problem was simplified because the contributions for the joint properties were derived from joint farm earnings and other joint income. Reliance upon Estate of Otte is misplaced because there the decedent brought only a small downpayment into the marriage as separate property. Virtually all the property in controversy was acquired over the years by borrowing the entire amount and then paying it back over the *55 years out of joint farm earnings. But here decedent brought valuable land and an established golfing business (and a restaurant of uncertain value) into the marriage, and petitioner had no separate funds. Indeed, as respondent contends, the source of most funds for the joint properties is traceable to decedent's original investment in the 62nd Street property. Decedent was engaged in a golfing enterprise known as Little America at the time of his marriage to petitioner in 1953. Little America was situated on land decedent purchased under a conditional sales contract entered into on May 25, 1944. Decedent placed $10,000 down, took possession, and paid $62,000 over to the sellers in monthly payments of $600 a month from May 25, 1944, to May 25, 1954. The record leaves little doubt that decedent had the burdens and benefits of ownership with respect to this property, and thus was its owner for Federal tax purposes at the time of his marriage. As between decedent and the sellers, the only effect of the transfer of title on May 25, 1954, was the release of the sellers' security interest in the property. As such, we must view Little America as decedent's separate property brought *56 into the marriage. Since the 62nd Street property was divided and sold in parcels during 1960 to 1969 at substantial gains for proceeds in excess of $400,000, and these sums were used to purchase and improve the 56th Street property (location of the 56th Street Golf Center), [4] and this property was the principal joint asset in the estate, [5] we agree with respondent that most of the jointly owned wealth is traceable to decedent's original investment in the 62nd Street property. Moreover, no evidence was presented to establish the value of petitioner's services in relation to decedent's capital and service contributions, or to trace the profits from the businesses *57 to specific joint properties. According to the joint income tax returns, the businesses were largely unprofitable until 1970. But all the downpayments for jointly owned real estate and many of the remaining installments were paid as of March 1971. In view of this and petitioner's burden of proof, there is no basis for allowing the estate to exclude 50 percent of the jointly owned property from the gross estate. With respect to the 62nd Street property, petitioner argues one-half of the appreciation from the time of joint ownership up to sale of the property should be treated as separate property in determining her joint property contributions. This argument is based upon her rights to one-half the sale proceeds as a joint tenant under Indiana law. We reject this argument because whether creation of a joint interest entitles petitioner to subsequent appreciation under State law is not at issue. The Federal estate tax concept of ownership under section 2040 looks to the source of the consideration represented by the property and disregards legal title. Since decedent apparently supplied *58 all the consideration for the purchase of the jointly owned 62nd Street property, which would have been fully included in his gross estate if retained, section 2040 cannot be avoided by disposing of the property and converting it into other joint property. This principle was recognized in Endicott Trust Company v. United States305 F. Supp. 943 (N.D.N.Y. 1969). There the decedent supplied all the consideration for jointly owned securities, the securities later were sold, the proceeds deposited in a joint bank account, and used to purchase other jointly owned securities. The full value of the securities jointly owned at decedent's death was held includible in decedent's gross estate despite the surviving tenant's interests under State law. Having heard petitioner's testimony and having observed her on the witness stand, we are convinced that petitioner contributed much to both the marriage and the business enterprises. Unfortunately, the financial enterprises of petitioner and her husband were not handled in such a way as to give her much credit for her contributions for estate tax purposes. She drew no salary from any of the businesses and apparently had no *59 separate income of her own. Nevertheless, we do believe that some recognition of petitioner's contributions should be given with respect to the profit realized from the operation of the 56th Street Golf Center in 1970 and 1971. That enterprise reported net income of $45,897.27 for 1970 and $49,568.10 for 1971. We conclude that petitioner's services were responsible for at least half of the net profit and that a portion of it found its way into payments made in those years on the purchase price of the jointly owned properties. One-half of the net profit for the 2 years is $47,732.69. Assuming, as we believe we must, that a part of petitioner's share of the profit was used for living expenses and possible acquisition of assets in her own name, [6] we find that petitioner had $25,000 of funds available for payments toward the purchase price of some of the jointly held properties. As nearly as we can determine from the evidence presented approximately *60 $36,600 was due to be paid during 1970 and 1971 on the land contracts under which the jointly held real estate reported on decedent's estate tax return were being purchased. Treating one-half of that amount as having been paid for by each of petitioner and decedent, we conclude that $18,300 in value of the jointly held property at the time of decedent's death was contributed by petitioner and should be excluded from decedent's estate. We recognize that this approach does not comply strictly with the requirements of the regulations but believe the result finds support in some of the case law on the subject. See Estate of Drazen v. Commissioner,48 T.C. 1 (1967); Estate of Otte v. Commissioner,supra;Berkowitz v. Commissioner,supra.We believe this conclusion is more reasonable and realistic than would be a refusal to recognize any value for petitioner's contributions to the joint estate. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise specified.↩
*. Ensleys agreed to a credit of $35,000.00 in consideration for a $25,000.00 payment on the option in 1962.↩
1. No returns for the years 1953-8 and 1961-3 were offered into evidence. The appraisal of this property, the Ensleys' residence, did not allocate the total value between land and improvements.
[2] After losses of $2,183 and $2,775 for 1969 and 1970, respectively, from "Dairy Dandy," located on the 56th Street Golf Center grounds. Parcel 9 included what was later designated parcel 13.
[3]↩ The Ensleys' reported income from interest, rent, and gain on sales of real estate and stocks.
4. According to the Stipulation of Facts, the proceeds from the sale to Glendale Center, Inc., were used to purchase parcel 9 (which also included what was later designated as parcel 13). Also, condemnation proceeds from Little America were reported on various joint income tax returns as used to improve the 56th Street Golf Center for section 1033 purposes. ↩
5. Parcel 9 and its improvements were valued at $575,000, parcel 13 and its improvements at $18,250, and parcel 12 at $73,000, all before encumbrances.↩
6. In light of the incoming cash flow indicated by the joint income tax returns of petitioner and her husband for the years 1970 and 1971, we are somewhat surprised by the dearth of liquid assets reported in decedent's estate.↩